IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 96-50952

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ESTER SOTO-SILVA,

Defendant-Appellant.

---

Appeal from the United States District Court for the
Western District of Texas

---

November 12, 1997

Before GARWOOD, DUHÉ and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Ester Soto-Silva (Soto) appeals her convictions in the United States District Court for the Western District of Texas, El Paso division, for conspiracy to distribute and to possess with intent to distribute marihuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count I) and for maintaining a premises for the purpose of distributing marihuana in violation of 21 U.S.C. § 856(a)(1) (count III).  Soto challenges her convictions on the grounds that a juror at her trial was not proficient in English, that the deliberate ignorance instruction given to the jury was invalid as a matter of law, and that the evidence was

insufficient to convict her on count III. Finding no reversible error as to count I, we affirm Soto's conviction and sentence for conspiracy; finding that the evidence on count III was sufficient but that it was reversible error to give the deliberate ignorance instruction as to that count, we reverse and remand the conviction on count III.

## Facts and Proceedings Below

On September 12, 1996, the jury found Soto guilty on counts I and III. Over two months later, on November 20, 1996, Soto filed a Motion for New Trial, on the grounds that one of the jurors in the case was not proficient in English. The trial court, Judge Briones, denied her motion, and on November 25, 1996, sentenced Soto to 78 months' imprisonment on each count, to be served concurrently, and imposed a special assessment on each count.

In October of 1995, Soto and her children moved into her parents' house, located at 1400 Wyoming in El Paso, Texas, in order to care for her ailing mother. In early November of 1995, Soto's mother passed away and a few days later her father moved to California. Around this same time, Soto engaged in various drug-related activities in connection with the Roberto Orozco drug organization.

The case against Soto arose out of a Drug Enforcement Administration (DEA) operation where undercover agents infiltrated the Orozco drug organization by posing as truck drivers willing to transport large amounts of marihuana to the interior of the United States. According to the government's witnesses, Soto's role in

2

the organization included handling money for Orozco's marihuana trafficking activity, taking part in the smuggling trips, and providing the premises where the marihuana was packaged for distribution to the interior of the United States. The DEA agents admitted that they never saw Soto with any drugs, but several witnesses stated that large quantities of drugs were picked up for shipment from the house where Soto was living.

A search of the house at 1400 Wyoming uncovered a small amount of marihuana, numerous packaging supplies commonly used to wrap large quantities of marihuana, and several empty bags that once contained marijuana. It is this house, in which Soto allegedly maintained a drug packaging and distribution center, and those supplies, that formed the core of the charges against her.

On appeal, Soto raises three issues. First, she argues that the district court should have granted her motion for new trial because one of the jurors was fundamentally incompetent to serve on a jury. Second, she argues that the deliberate ignorance jury instruction was erroneous and warrants reversal and remand for new trial. Finally, she argues that there was insufficient evidence to support a conviction under 21 U.S.C. § 856(a)(1) for maintaining the house at 1400 Wyoming for the purpose of distributing marihuana. Soto does not challenge the sufficiency of the evidence on the conspiracy charge (count I).

**Discussion**

I.   Competency of Juror

Soto challenges the district court's denial of her motion for

3

new trial, claiming that a juror in her trial was unable to speak or understand English, and was therefore fundamentally incompetent to serve as a juror.  Ordinarily, a litigant may challenge the qualification of a juror under 28 U.S.C. § 1867(a), but such a challenge must be made before trial begins.[1]  Since Soto only challenged the juror's competency months after her trial, any claim merely of statutory disqualification is too late.  Without a timely statutory claim, a litigant will be entitled to relief only upon a showing that the juror was fundamentally incompetent.  *See United States v. Gates*, 557 F.2d 1086, 1088 (5th Cir. 1977); *Ford v. United States*, 201 F.2d 300, 301 (5th Cir. 1953).  *See also United States v. Crockett*, 514 F.2d 64, 69 (5th Cir. 1975).

We review the denial of a motion for new trial on an abuse of discretion standard.  *See United States v. Vergara*, 714 F.2d 21, 23 (5th Cir. 1983).  A motion for new trial based on a juror's lack of statutory qualification (not raised before trial) should be granted only upon a showing of actual bias or prejudice. *United States v. Crockett*, 514 F.2d 64, 69 (5th Cir. 1975).  Alternatively, a new trial may be granted if a juror was fundamentally incompetent. *United States v. Gates*, 557 F.2d 1086, 1088 (5th Cir. 1977).

As the movant, Soto bore the burden of proving to the district

---

[1]"In criminal cases, *before the voir dire examination begins*, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, *whichever is earlier*, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."  28 U.S.C. § 1867(a) (emphasis added).

4

court that a new trial was justified. *See United States v. Geders*, 625 F.2d 31, 33 (5th Cir. 1980) ("[T]he burden of justifying a new trial is fairly placed upon the defendant."); 58 Am. Jur. 2d *New Trial* § 519 (1989). It was incumbent upon Soto to show that the juror in question, juror Villalpando, was fundamentally incompetent to serve on the jury. *Cf. United States v. Cashio*, 420 F.2d 1132, 1136 (5th Cir. 1970) (holding that when a defendant moves for a new trial on the grounds that a juror is disqualified because of prejudice, "prejudice is not presumed . . . . [and the defendant has] the burden of proving prejudice by a preponderance of the credible evidence").

Soto moved for a new trial on the grounds that juror Villalpando did not speak or understand English, but she never asked the court to hold an evidentiary hearing in order to determine the level of Villalpando's English ability. As it was, however, Soto's only evidence tendered concerning the juror's alleged incompetence was an excerpt from the transcript of the *voir dire* conducted September 30, 1996, in a different criminal case pending before a different judge of the same court, in which juror Villalpando was called to serve on the jury panel.

During jury selection in this second case, Villalpando was questioned by Chief Judge Hudspeth about his understanding of English. Though Judge Hudspeth ultimately excused Villalpando from the venire pool because of his difficulty with English, this rather brief *voir dire* examination is not conclusive as to whether Villalpando had sufficient ability to speak and understand English

so as to be able to render minimally competent service as a juror. On the one hand, Villalpando stated several times that he did not understand or speak "much" English and once stated that a verdict was not reached in the present case, but on the other hand, he did appear to understand the court's questions concerning his education and past jury service and he gave relatively comprehensible and responsive answers. After the prosecution challenged Villalpando, and defense counsel stated they had no objection to the challenge, Judge Hudspeth excused him, stating "Might be better and safer to call someone in your place."

Without an evidentiary hearing in support of her motion for new trial, Soto's only tendered proof concerning Villalpando's language ability is less than complete and is not wholly compelling. Because the dialogue between Villalpando and the court in the second case is not clearly and compellingly dispositive, we hold that Soto has failed to demonstrate that the trial court abused its discretion by denying her motion for new trial.

II. Deliberate Ignorance Jury Instruction

Soto next argues that her case should be remanded for new trial because of the "deliberate ignorance" jury instruction. Over Soto's objection, the court instructed the jury that they could find that the defendant acted "knowingly" if she deliberately "closed her eyes to what would otherwise be obvious to her. . . . [and thereby] deliberately blinded herself to the existence of a fact."

We review challenges to jury instructions by determining

6

"whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. Stacey*, 896 F.2d 75, 77 (5th Cir. 1990). The charge must be both "legally accurate and factually supportable." *United States v. Cartwright*, 6 F.3d 294, 300 (5th Cir. 1993). This generally means that the "review of a deliberate ignorance instructions is necessarily a fact-intensive endeavor." *United States v. Lara-Velasquez*, 919 F.2d 946, 952 (5th Cir. 1990). Thus, a case will not be reversed unless "the instructions taken as a whole do not correctly reflect the issues and law." *United States v. McKinney*, 53 F.3d 664, 676 (5th Cir. 1995).

A.   *Maintaining a Place for the Purpose of Distributing a Controlled Substance*

Count III alleged that from on or about November 1, 1995, to on or about January 21, 1996, Soto "unlawfully, knowingly, and intentionally maintained a place . . . for the purpose of distributing marihuana" in violation of 21 U.S.C. § 856(a)(1). This Court has held that a deliberate ignorance instruction is inappropriate, and may constitute reversible error, if given as to an alleged section 856(a)(1) violation. *United States v. Chen*, 913 F.2d 183, 190 (5th Cir. 1990). In *Chen* we stated that:

> "[W]e conclude that the deliberate ignorance instruction cannot be used for [§ 856(a)(1)]. One cannot be deliberately ignorant (in order to convict for the knowledge element) and still have the purpose of engaging in illegal drug activities. Therefore the instruction was inappropriate for an offense which requires a specific purpose by the defendant." *Id.*

While *Chen* indicates that there was sufficient evidence that the

7

defendant was in fact deliberately ignorant, it nevertheless held that as a matter of law the concept of deliberate ignorance was inappropriate with respect to section 856(a)(1).  Following *Chen*, we hold that the deliberate ignorance instruction in Soto's case was in error as it related to count III.  Nor can we say that this error was clearly harmless as to count III under the evidence here.  Because of this instructional error, the conviction and sentence (and assessment) on count III are reversed and that count is remanded.

B.    *The Conspiracy Count*

The deliberate ignorance instruction was, however, appropriate for count I.  Count I alleged that from on or about November 1, 1995, to on or about January 21, 1996, Soto "knowingly and intentionally conspired" to possess with intent to distribute a quantity of marihuana in violation of 21 U.S.C. §§ 841(a)(1) and 846.  We have upheld similar deliberate ignorance instructions in other conspiracy cases where the defendant claimed a lack of guilty knowledge and the evidence supported a reasonable inference of deliberate ignorance.  *See United States v. McKinney*, 53 F.3d 664, 676-77 (5th Cir. 1995) *(citing United States v. Wisenbaker*, 14 F.3d 1022, 1027 (5th Cir. 1994)).

Specifically, the evidence must raise two inferences.  First, the evidence must show (*i.e.* raise a reasonable inference) that the "defendant was subjectively aware of a high probability of the existence of the illegal conduct" and second, the evidence must show that the "defendant purposely contrived to avoid learning of

8

the illegal conduct." *United States v. Ojebode*, 957 F.2d 1218, 1229 (5th Cir. 1992) *(citing United States v. Farfan-Careon*, 935 F.2d 678, 680 (5th Cir. 1991)); *see also United States v. Lara-Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990) (noting that the same evidence will often give rise to both inferences).

We find that this case meets both prongs of the *McKinney* test— Soto has claimed a lack of guilty knowledge and the evidence presented at trial warrants the inference of deliberate ignorance. The first prong is satisfied because lack of guilty knowledge was a recurring theme of the defendant's case. Both in her counsel's opening and closing arguments and in her testimony on the witness stand, Soto insisted that she had no knowledge of any drug activities in her house.

The second prong—evidence supporting the inference of guilty knowledge—is satisfied by the following evidence: (1) Soto was living in a small house whose basement contained drug packaging supplies, empty drug bags, and a small amount of marihuana; (2) eye witness accounts that she socialized with, traveled with, and handled drug money for Roberto Orozco, a known drug trafficker; (3) testimony that a large shipment of marihuana was picked up from the alley behind her house; and (4) testimony by a member of Orozco's organization that a van full of drugs was loaded at Soto's house.

We are not unmindful of the risk inherent in such an instruction and that it is accordingly one which "should rarely be given." *United States v. Ojebode*, 957 F.2d 1218, 1229 (5th Cir. 1992). Nonetheless, this appears to be one such rare instance

9

where the instruction was appropriate, and, in any event, under the evidence here the giving of the instruction was clearly harmless as to count I. *See United States v. Breque*, 964 F.2d 381, 388 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 1253 (1993). We therefore affirm Soto's conviction for conspiracy under count I.

III. Sufficiency of the Evidence on Count III

Finally, Soto appeals the denial of her timely motion for judgment of acquittal on count III, arguing that the evidence was insufficient to support her conviction for maintaining a house for the purpose of distributing marihuana. Count III, alleging a violation of 21 U.S.C. § 856(a)(1), required that the government prove three elements, namely that Soto (1) *knowingly* (2) *maintained* the residence at 1400 Wyoming (3) for the *purpose* of distributing marihuana. *See* 21 U.S.C. § 856(a)(1).

This Court will reverse a guilty verdict for insufficiency of evidence only if a rational trier of fact could not find that the evidence, viewed in the light most favorable to the government, establishes each essential element of the crime beyond a reasonable doubt. *United States v. Gibson*, 55 F.3d 173, 180 (5th Cir. 1995). In reviewing the evidence, we make all reasonable inferences and credibility choices in support of the jury's verdict. *Id.*

A. *Knowingly*

The evidence discussed below, including testimony as to Soto's confession to her involvement in the drug organization, was clearly sufficient to go to the jury on the knowingly element.

B. *Maintain*

10

Whether a person *maintained* a premises is a fact-intensive issue that must be determined on a case-by-case basis. *United States v. Morgan*, 117 F.3d 849, 857 (5th Cir. 1997). In this case, although Soto did not have an ownership or leasehold interest in the house, she was in charge of the household and exercised "supervisory control" over the premises. *Cf. United States v. Morgan*, 117 F.3d 849, 856 (5th Cir. 1997) (holding that the defendant maintained an apartment even though his only connection to it was "supervisory control").

Although she was leasing her own apartment, Soto came to stay at her parents' house at 1400 Wyoming around mid-October 1995. Her parents were lessees of this house. She came to take care of her ailing mother, who was incapacitated. As a result, all the chores and responsibilities of maintaining the household fell upon Soto. The other residents of the house, including Soto's father, who spent much of the day out of the house drinking beer, Soto's school-aged children, and various other relatives all appear to have done far less around the house and had far less control than Soto. If anybody was maintaining the house it was Soto. Most telling is that Soto stayed in the house even after her mother died and her father moved to California in early November 1995, and eventually signed a lease in her own name in early January 1996.[2]

Based on all the evidence, we find that a jury could have concluded that Soto was more than a mere casual visitor and that

[2]However, the drug operation was soon thereafter shut down by the authorities before the term specified in the lease commenced.

11

she had a connection to and effective control over the house that was substantial enough to establish that she maintained it. *See United States v. Verners*, 53 F.3d 291, 295 (10th Cir. 1995) (holding that in order to maintain a premises, a defendant must be more than a casual visitor and must have some "substantial connection" to the home).

C.    *Purpose*

The purpose element is perhaps the most difficult to prove. The purpose to distribute marihuana must be Soto's; merely maintaining the premises so that others may engage in distribution is not a violation of section 856(a)(1). *Chen* at 190.

The presence of the packaging supplies, empty marihuana bags, and a small amount of marihuana in the basement allowed a jury to conclude that *someone* had the purpose of distributing marihuana from the house. The evidence sufficiently showed that Soto was a member of the conspiracy which had as one of its objects the distribution of marihuana from the house. The jury could reasonably find that the distribution purpose was at least in part Soto's because of this evidence, including the testimony by several witnesses detailing Soto's involvement in the drug organization and Soto's own confession about her involvement in the organization.[3]

Additionally, the fact that Soto remained at the house and signed a lease in her own name after her parents were no longer

---

[3]While she later denied making this confession, that presents a credibility choice which must be resolved in favor of the jury's verdict. *See United States v. Gibson*, 55 F.3d 173, 180 (5th Cir. 1995).

12

there indicates not only that she had some interest in the house greater than that of a casual visitor, but also that she had some purpose for being in the house other than merely looking after her mother. The evidence was sufficient for a jury to conclude that one of her purposes was drug distribution.[4]

Taking care of her mother may have been her initial and *primary* purpose for maintaining the house, but the evidence indicates that drug distribution was or became at least a significant purpose of Soto's for maintaining the house. We find there is sufficient evidence to support the jury's verdict, and decline to reverse Soto's count III conviction under 856(a)(1) on the grounds of insufficient evidence.

### Conclusion

For the foregoing reasons, we affirm Soto's conviction and sentence on count I,[5] but we reverse and remand Soto's conviction on count III because of the erroneous jury charge.

AFFIRMED in part; REVERSED and REMANDED in part

---

[4]We note that section 856(a)(1) does not require that drug distribution be the *primary* purpose, but only a significant purpose. *See United States v. Roberts*, 913 F.2d 211, 220 (5th Cir. 1990).

[5]There is no need for resentencing on count I, as the adjusted guideline range for that offense was unaffected by the count III conviction, and the count I sentence was the lowest permitted by its adjusted guideline range.