REVISED - August 23, 1999

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-20083

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LOURDES JEANETTE MORENO,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

August 17, 1999

Before JONES, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Defendant-Appellant Lourdes Jeanette Moreno appeals her conviction and sentence for importing more than five kilograms of cocaine and possession with intent to distribute cocaine. She challenges the sufficiency of the evidence; the reference to her invocation of her right to counsel at trial; and the jury instructions on deliberate ignorance. After careful review, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Lourdes Jeanette Moreno ("Moreno"), a Honduran citizen and permanent resident of Houston, arrived at Houston's Bush Intercontinental Airport on a flight from Honduras shortly after midnight. While passing through a U.S. Customs checkpoint, she reviewed with an agent, in Spanish, the customs declaration she had filled out on the plane. After they corrected several errors she had made, she indicated that she had food to declare and was referred to an agricultural inspector.

A U.S. Department of Agriculture inspector opened one of her two large bags upon seeing a suspicious aerosol can. He discovered some clothes, food, cigars and two smaller black leather bags. The inspector noticed that the two bags appeared empty, yet were heavy. Surprised to see nothing in the heavy bags, he referred Moreno to a customs inspector, Debra Zezima ("Zezima").

Zezima, out of Moreno's sight, cut into one of the bags. White powder, later determined to be cocaine, spilled out. Moreno was escorted to a detention room where Zezima informed her that she was carrying out a routine search for contraband. She physically searched Moreno yet found nothing of interest. In her handbag, Zezima found two Honduran passports. One, a worn passport, contained numerous entry stamps for travel between the United States and Honduras over the last several years; it had been extended until 1999. The second was new, just issued in Honduras days before. Zezima was curious as to why she had two passports.

Also found in her purse were her resident alien card, her ticket and boarding pass, luggage tags, a ticket for excess baggage, her itinerary, business cards, two address books, and two letters. All documents were in Moreno's name. She had $29 dollars on her; when asked how she planned to get home, she said her roommate would pay for a cab on her arrival. Moreno remained calm throughout the questioning.

Zezima, after handcuffing Moreno and again outside of her presence, drilled a whole in a heavy briefcase also in Moreno's possession. The briefcase smelled strongly of glue, a sign that it might contain a secret compartment such as a false bottom. It, too, contained cocaine secreted in a hidden compartment. In all, the agents found about 25 pounds of cocaine (7.8 kilos)—10 in each black leather bag and 5 in the briefcase. Zezima also had determined that Moreno had paid cash for her ticket and that she carried a beeper, both arousing Zezima's suspicions.

Other agents were called in, including the lead agent, Steven Coffman ("Coffman"). Together, they informed Moreno that they had found cocaine and advised her of her rights. A customs inspector who spoke Spanish acted as an interpreter as needed. Moreno signed a waiver of rights and was escorted back to the passenger area. There, she observed the two leather suitcases

2

on a table with the rest of the luggage on a cart.  Moreno informed Coffman that she was carrying the bags into the United States for a man named Nicholas, whose last name she did not know, at the request of her friend Sylvia.  He had paid her $75.  Moreno expected Nicholas to page her in Houston and tell her where to deliver the bags.  She identified the luggage on the cart as her own.  She also identified some of the other items in her luggage, and explained who their designated recipients were.

Coffman listed each piece of luggage and what Moreno had paid for them.  She paid $30 for each large red suitcase, $20 for a smaller bag, and $12 for the briefcase, purchased on Harwin Street in Houston.[1]  When agent Coffman informed her that the briefcase also contained cocaine, she told him that Nicholas had given her the briefcase and invoked her right to counsel.  Moreno was transported to jail where she was booked, searched and detained.

Moreno was charged in a two-count indictment with importation of a controlled substance and possession of cocaine with the intent to distribute.  Prior to trial, she moved to suppress the statements obtained from her following her arrest.  The court granted the motion to suppress Moreno's request for counsel and directed the government not to elicit testimony about the request; it denied the motion in all other respects.

At trial, during the government's case-in-chief, Coffman, in response to the prosecutor's questions and in violation of the pre-trial order, indicated that Moreno had requested counsel when told there was cocaine in the briefcase.  Moreno moved for a mistrial.  The record reflects that the judge was very displeased with the testimony and the prosecutor's failure to adhere to the pre-trial order.  After an extended colloquy with counsel, the court  instructed the jury to disregard the testimony and denied the motion.

Moreno explained at trial that she worked locally by selling food to people at cantinas and to local customers.  She financed visits to her family in Honduras by transporting packages for Hondurans living in Houston.  She generally charged $5 per pound for clothing and other goods and

---

[1]The same model briefcase was found in a shop on Harwin Street, but for $50.

$7 per pound for appliances to be taken to Honduras. She frequently brought letters, food and clothes on her return trips.

After spending a few weeks collecting items to bring with her, for which she earned $300, Moreno purchased with cash a ticket to Honduras. While there, she received a call from Sylvia asking her to bring back bags as a favor for a friend. Apparently, he had borrowed the bags when in the United States and now needed to return them. A man named Nicholas came by and delivered the bags. She testified that she noticed one was heavier than the other and opened it up to determine why; she found the briefcase inside.

She also testified that a friend, Luisa, had given her the beeper. The travel agent who sold the ticket testified that about 50% of her Central American customers pay cash and that they commonly carried beepers. She obtained the new passport while there because Honduran authorities had told her that the old passport was in such disrepair that it would not be accepted anymore; she did not explain why it had been extended to 1999.

The court charged the jury not to consider any testimony or other evidence which had been stricken. Over Moreno's objection, the court instructed the jury that it could find knowledge from the defendant's deliberate ignorance. The jury convicted Moreno on both counts. She was sentenced to 135 months' imprisonment, and timely appeals.

DISCUSSION

Moreno raises three issues on appeal. First, Moreno challenges the sufficiency of the evidence supporting her conviction. Next, Moreno contends that the district court erred in denying her motion for a mistrial since the government impermissibly presented testimony bearing upon her invocation of her right to counsel. Finally, Moreno avers that the district court committed reversible error by instructing the jury on deliberate ignorance. We shall consider each in turn.

A. Sufficiency of the Evidence

Moreno moved for acquittal at the close of the government's case-in-chief and at the end of trial. A motion for judgment of acquittal challenges the sufficiency of the evidence to convict. See

4

FED. R. CRIM. P. 29(a). Moreno argued that insufficient evidence established her knowledge that she possessed and imported cocaine. The court denied each motion.

Post conviction, our review for sufficiency of the evidence is narrow. See United States v. Westbrook, 119 F.3d 1176, 1189 (5th Cir. 1997) (citing United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996)). We review the evidence de novo. See United States v. Medina, 161 F.3d 867, 872 (5th Cir. 1998). In doing so, we view the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the verdict. See id.; United States v. Posada-Rios, 158 F.3d 832, 855 (5th Cir. 1998). In addition, all credibility determinations are made in the light most favorable to the verdict. See United States v. Hull, 160 F.3d 265, 272 (5th Cir. 1998). Ordinarily, we must affirm if a rational trier of fact could have found that the government proved the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Medina, 161 F.3d at 867.

The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence. See United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998); Westbrook, 119 F.3d at 1189. "If the evidence tends to give 'equal or nearly equal circumstantial support' to guilt or innocence, however, reversal is required: When the evidence is essentially in balance, 'a reasonable jury must necessarily entertain doubt.'" Ortega Reyna, 148 F.3d at 543 (quoting Lopez, 74 F.3d at 577).

To establish a violation of 21 U.S.C. § 841, possession with intent to distribute, the government must prove beyond a reasonable doubt that Moreno (1) knowingly (2) possessed cocaine (3) with the intent to distribute it. See Medina, 161 F.3d at 873; United States v. Casilla, 20 F.3d 600, 603 (5th Cir. 1994). Possession may be actual or constructive. See id. The intent to distribute may be inferred from the value and quantity of the substance possessed. See id.

The elements of a violation of 21 U.S.C. §§ 952 and 960, importation of cocaine, are: (1) the defendant played a role in bringing a quantity of a controlled substance into the United States from

5

outside of the country; (2) the defendant knew the substance was controlled; and (3) the defendant knew the substance would enter the United States.  See Medina, 161 F.3d at 873; Casilla, 20 F.3d at 603.  A jury could find knowledge of drugs if a defendant brings cocaine-laden luggage into the United States and claimed the luggage as hers.  See  United States v. Martinez, 577 F.2d 960, 962 (5th Cir. 1978).

Ordinarily, knowledge of the existence of drugs may be inferred from control over the location in which they are found.  When the drugs are secreted in a hidden compartment, however, we require "additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge." Ortega Reyna, 148 F.3d at 544 (quoting United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir. 1995)).  We require this additional evidence because it "is at least a fair assumption that a third party might have concealed the controlled substance in the [luggage] with the intent to use the unwitting defendant as the carrier in a smuggling enterprise."  Id. (quoting United States v. Diaz-Carreon, 915 F.2d 951, 953 (5th Cir. 1990)).

The evidence shows that Moreno identified the briefcase as belonging to her.  Once informed that the bag contained cocaine, Moreno recanted and offered an implausible explanation for her error and the ownership of the briefcase.  In Casilla, we held that inherent inconsistencies provide the needed indicia of guilty knowledge.  See Casilla, 20 F.3d at 606; see also Anchondo-Sandoval, 910 F.2d at 1237 (relying on inconsistent statements regarding travel motives and destinations to indicate guilty knowledge).[2] Even though Moreno testified that she was mistaken when she identified the briefcase as hers, the factual dispute must be resolved in favor of the verdict.  Additionally, the evidence indicated that Moreno had an absence of nervousness when she was arrested and showed a lack of surprise when the cocaine was discovered.[3]

---

[2]But see, Ortega Reyna, 148 F.3d at 546 (finding nothing inherently inconsistent in different answers to questions on destination and origin).

[3]A non-exclusive list of additional types of behavior that we have relied on as evidence of guilty knowledge include: "(1) nervousness; (2) absence of nervousness, i.e., a cool and calm demeanor; (3) failure to make eye contact; (4) refusal or reluctance to answer questions; (5) lack of

The evidence exposes Moreno's inconsistent statements and implausible explanations which could lead a reasonable trier of fact to doubt Moreno's credibility. Doubts of Moreno's credibility likely vitiated the effect of any favorable evidence, including her testimony. Thus, a rational trier of fact could have found that Moreno knew of the cocaine in the briefcase and the bags beyond a reasonable doubt. See Martinez, 577 F.2d at 962. We find that sufficient evidence exists to satisfy the knowledge element of Moreno's conviction.

B. Invocation of Right to Counsel

Moreno alleges reversible error in the court's refusal to grant a mistrial on the basis that the prosecutor improperly elicited testimony on her invocation of her right to counsel. See Doyle v. Ohio, 426 U.S. 610, 618-19 (1976) (holding prosecution's comments on defendant's post-Miranda silence a constitutional violation). Moreno moved for a mistrial on this basis but the court denied her motions. We review the district court's refusal to grant a mistrial for abuse of discretion. See United States v. Webster, 162 F.3d 308 345 (5th Cir. 1998); United States v. Willis, 6 F.3d 257, 263 (5th Cir. 1993).

The government's use of a defendant's silence during its case-in-chief may constitute a constitutional violation. See United States v. Rodriguez, 43 F.3d 117, 121 (5th Cir. 1995); Chapman v. United States, 547 F.2d 1240, 1245 (5th Cir. 1977); see also Doyle, 426 U.S. at 618-19. If we find an error, we apply the doctrine of harmless constitutional error by reviewing the record to determine whether the error was harmless beyond a reasonable doubt. See United States v. Carter, 953 F.2d 1449, 1462 (5th Cir. 1992); Chapman, 547 F.2d at 1247-48; see also Chapman v. California, 87 S. Ct. 824, 827-28 (1967) (explaining harmless constitutional error doctrine). We also seek to determine whether the remark was a spontaneous comment by the witness or a comment prompted by the prosecutor. See United States v. Smith, 635 F.2d 411, 413 (5th Cir. 1981); see Chapman, 547

surprise when contraband is discovered; (6) inconsistent statements; (7) implausible explanations; (8) possession of large amounts of cash; and (9) obvious or remarkable alterations to the [container], especially when the defendant has been in possession of [it] for a substantial period of time." Ortega Reyna, 148 F.3d at 543 (footnotes omitted).

7

F.2d at 1248-50.[4]  Such an analysis requires us to examine the remarks in context to determine

whether a violation has occurred.  See Rodriquez, 43 F.3d at 121.

At a pre-trial hearing, the court granted Moreno's motion to suppress the request for counsel

at the end of the airport interrogation.  The government was admonished not to elicit testimony about

her request.  During the prosecution's direct examination of Coffman, Coffman explained how the

drugs were found and recounted his conversation with Moreno:

> A. After we talked about her luggage that was going to be given to her cousin, we went back into the little detention room and I explained to her that we knew there was cocaine in the briefcase as well.
>
> Q. And what did she say?
>
> A. She indicated that she wanted an attorney.

While Coffman could comment on the  fact that Moreno attributed ownership to Nicholas, he was

expressly prohibited from mentioning Moreno's invocation of her right to counsel.  Defense counsel

immediately requested a sidebar.  During this conference at the bench, the prosecutor explained that

she had anticipated a reference to Nicholas in response to her question.  She acknowledged that

Coffman was present at the suppression or pre-trial hearing but admitted that she did not inform him

---

[4]The issue of prosecutors eliciting testimony pertaining to a defendant's post arrest silence is not novel.  In United States v. Impson, 531 F.2d 274, 275 (5th Cir. 1976), the prosecutor specifically asked a witness about the defendant's post-arrest silence.  The court found that the elicitation had an "intolerably prejudicial impact[,]" reversed the case, and remanded for a new trial.  Impson, 531 F.2d at 279.  Later, in United States v. Sklaroff, 552 F.2d 1156, 1161 (5th Cir. 1977), a witness spontaneously commented on the defendant's silence.  The court found that the comment was harmless because the expression of silence could not contradict the defendant's exculpatory defense since the defendant did not offer any exculpatory explanation.  See Sklaroff, 552 F.2d at 1162.

However, we have permitted the introduction of such evidence after finding that it was pertinent to the defendant's defense.  See United States v. Johnson, 558 F.2d 1225, 1230  (5th Cir. 1977) (finding no error where the prosecutor elicited four separate comments on the defendant's post-arrest statements concerning her wish to remain silent because it went to the heart of the sole defense, encouraging the jury to believe that the defense was fabricated after arrest).

We have permitted the introduction of such testimony in another instance.  See United States v. Whitaker, 592 F.2d 826, 830 (5th Cir. 1979).  In Whitaker, the prosecutor inadvertently caused a witness to comment on a defendant's silence.  The court found that the prosecutor intended the witness to comment on actual statements made by the defendant and not on the defendant's silence.  Whitaker, 592 F.2d at 830.  The court found that the remark was harmless because the witness's testimony was a misstatement on the defendant's silence; cautionary instructions were given; and the prosecutor did not "highlight" or "focus on" the remark in any way.  See id. at 830-31.

of the court's order. At the end of the government's case, Moreno pressed her motion for mistrial. After further discussions with the parties and Coffman, the court denied the motion.

Agent Coffman's remark calls for no construction; the violation of Moreno's constitutional right is clear. By stating that Moreno requested counsel immediately after she was informed that the briefcase contained cocaine, Coffman raised the inference that she was caught in a lie rather than her explanation that there had been a misunderstanding concerning ownership of the briefcase.

Moreover, we cannot excuse the conduct because, unlike the classic Doyle situation where the silence is used to impeach the defendant on cross-examination, it arose here on direct. The substantive use of such evidence also is prohibited. See Whitaker, 592 F.2d at 830 (5th Cir. 1979); Johnson, 558 F.2d at 1226-27; Chapman, 547 F.2d at 1244. Indeed, the substantive use of a defendant's invocation of counsel or silence before the defendant has the opportunity to offer her exculpatory story places her in an untenable position. "[I]f [s]he [does] not take the stand, an inference of guilt by the jury [is] a possible inference; if [s]he [does] take the stand, [her] credibility [will] already be in question and the jury might simply discount as fabricated a story the defendant neglected to tell the police on the scene." Chapman, 547 F.2d at 1243 n.5 (explaining United States v. Impson, 531 F.2d 274, 279 (5th Cir. 1976)). Doyle governs where the "comments are 'designed to draw meaning from silence.'" Pitts, 122 F.3d at 280 (quoting Anderson v. Charles, 447 U.S. 404, 409 (1980) (per curiam)). That was the case here. The timing of the question and answer regarding her silence, specifically related to her exculpatory story and challenged Moreno's credibility. Its natural consequence, if not purpose, was "to rebut the defense of no knowledge" by calling into question her account. See Johnson, 558 F.2d at 1229.

Finally, the government emphasizes the minimal nature of the answer and the court's response, arguing it does not rise to the level of a constitutional violation. The government quotes from Greer v. Miller, 483 U.S. 756 (1987), where the Supreme Court found no Doyle violation because:

> the court explicitly sustained an objection to the only question that touched upon Miller's [the defendant's] post-arrest silence. No further questioning or argument with respect to Miller's silence occurred, and the court specifically advised the jury that it should disregard any questions to which an objection was sustained. Unlike the

9

> prosecutor in <u>Doyle</u>, the prosecutor in this case was not allowed to under take impeachment on, or permit[ted] . . . to call attention to, Miller's silence. The fact of Miller's post-arrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no <u>Doyle</u> violation occurred in this case.

<u>Id</u>. at 764 (internal citations and quotations omitted). The Court went on to hold that "the sequence of events at the trial, beginning with the single comment—but including particularly the proper and immediate action by the trial court, and the failure of defense counsel to request more specific instructions—indicates that Miller's post-arrest silence was not used against him within the meaning of <u>Doyle</u>." <u>Id</u>. at 764 n.5. We recognize that this case also involves a single comment and that the court both sustained an objection and instructed the jury to disregard the answer. The prosecutor also made no further reference to it.

Yet <u>Greer</u> does not control the outcome here. First, a single comment may constitute a <u>Doyle</u> violation, and <u>Greer</u> does not hold otherwise. <u>See id.</u> (rebutting dissent's contention that the Court held "a single comment cannot be sufficient to constitute a <u>Doyle</u> violation"); <u>id</u>. at 770 (Brennan, Blackmun and Marshall, JJ., dissenting). Indeed, the Court held that the lack of a violation stemmed from "the sequence of events," <u>id</u>., a collocation of events taken together. The sequence here, although similar, is not the same.

Second, we have interpreted <u>Greer</u> as limited to situations in which no answer is given to the improper question. <u>See</u> <u>Carter</u>, 953 F.2d at 1466 (interpreting <u>Greer</u> as holding "that an objection which was interposed before an improper question about post-arrest silence could be answered, and which was followed by an instruction to the jury to ignore the question, sufficed to prevent a <u>Doyle</u> violation from occurring). Here the prosecutor's question was in fact answered.

Finally, a sustained objection followed by a curative instruction is not a panacea. It may militate against finding a constitutional violation, <u>see</u> <u>Greer</u>, 483 U.S. at 764, or become central to the harmless error analysis. <u>See</u> <u>Carter</u>, 953 F.2d at 1466 (explaining impact of <u>Greer</u> respecting instructions as "at least effective to prevent the prosecutorial misconduct . . . from rendering the trial fundamentally unfair" and including instruction in plain error analysis for harm). But they do not

10

automatically mean no violation has occurred. See id.

Here, the court sustained the objection and instructed the jury to disregard the answer. However, we must consider the effect of the answer. The answer necessarily used Moreno's invocation of counsel and subsequent silence to imply that her claim of an exculpatory story lacked credibility. Moreover, when considered in context, the error appears intentional. For these reasons, we find a constitutional violation. Our analysis, however, does not conclude here; we must determine whether the constitutional error was harmless.

An error is harmless only if we can determine beyond a reasonable doubt that the improper testimony did not contribute to the jury's verdict. See Chapman, 386 U.S. at 26. In Chapman, we classified Doyle violations into three categories for purposes of harmless error review:

> When the prosecution uses defendant's post-arrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous.

> When the prosecutor does not directly tie the fact of defendant's silence to his exculpatory story, i.e., when the prosecutor elicits that fact on direct examination and refrains from commenting on it or adverting to it again, and the jury is never told that such silence can be used for impeachment purposes, reversible error results if the exculpatory story is not totally implausible or the indicia of guilt not overwhelming.

> When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.

Chapman, 547 F.2d at 1249-50. This first category includes Doyle violations that explicitly or repeatedly link the silence to the exculpatory story; these are harmful per se, affecting the fundamental fairness of the trial, and require reversal. See, e.g., McDonald, 620 F.2d at 563. We held in Carter that sustained objections with curative instructions prevent the violation from falling into this category that automatically requires reversal. See Carter, 953 F.2d at 1466.

The latter two categories do not present "rigid rules but instead are guidelines to help a court examine a Doyle violation." United States v. Cardenas-Alvarado, 806 F.2d 566, 572 (5th Cir. 1986) (citing Alderman v. Austin, 695 F.2d 124, 126 n.7 (5th Cir. 1983) (en banc)).

11

We agree with the government and find that the comment falls within the last of the three Doyle categories. The facts of this case present one of overwhelming guilt inasmuch as Moreno offered inconsistent and implausible explanations for the drugs found in the luggage she was transporting.[5] Comparatively, the reference was minor especially since the district court took immediate corrective action and effectively precluded any further references. Notwithstanding the reference, the evidence in this case supports Moreno's conviction beyond a reasonable doubt. We are satisfied that the reference did not prejudice the jury's deliberations. The court directed the jury to disregard the reference. We presume the jury followed those instructions. See U.S. v. Johnston, 127 F.3d 380, 393 (5th Cir. 1997). Although we find a constitutional error, such error was harmless; therefore, the district court did not abuse its discretion in denying the motion for a mistrial.

C. Deliberate Ignorance Instruction

Moreno complains that the district court improperly instructed the jury on deliberate ignorance. We review challenges to jury instructions to determine "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." United States v. Soto-Silva, 129 F.3d 340, 34 (5th Cir. 1997); United States v. Cartwright, 6 F.3d 294, 300 (5th Cir. 1993); United States v. Lara-Velasquez, 919 F.2d 946, 950 (5th Cir. 1990). The district court has broad discretion in fashioning the charge. See United States v. McKinney, 53 F.3d 664, 676 (5th Cir. 1995). Nonetheless, the charge must be legally accurate and factually supportable; the court may not instruct the jury with a charge that lacks an evidentiary predicate. See Soto-Silva, 129 F.3d at 344; Cartwright, 6 F.3d at 300. When examining whether the evidence sufficiently supports the court's

---

[5]See, e.g., Rodriguez, 43 F.3d at 123 (finding story that defendant sold gun to undercover officer under direction and threats of confidential informant not implausible but evidence of guilt overwhelming); United States v. Soudan, 812 F.2d 920, 931 (5th Cir. 1986) (finding minor violation harmless in light of overwhelming evidence of guilt); Whitaker, 592 F.2d at 831 (finding error harmless because evidence of guilt overwhelming and violation minor and corrected); Chapman, 547 F.2d at 1249 (finding overwhelming guilt and story that Chapman was just retrieving his crowbar from Bank's back door where he found it silly).

charge, we must view the evidence and all reasonable inferences therefrom in favor of the government.  See Glasser v. United States, 315 U.S. 60, 80 (1942); Cartwright, 6 F.3d at 301.

The court gave a deliberate ignorance instruction.[6]  We have consistently upheld such instructions so long as they have the required factual basis.  See United States v. Faulkner, 17 F.3d 745, 766 (5th Cir. 1994).  "A deliberate ignorance instruction allows the jury to convict without finding that the defendant was aware of the existence of illegal conduct."  Cartwright, 6 F.3d at 301 (quoting United States v. Ojebode, 957 F.2d 1218, 1229 (5th Cir. 1992)).  Accordingly, the purpose "is to inform the jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge."  McKinney, 53 F.3d at 676 (quoting United States v. Lara-Velasquez, 919 F.2d 946, 951 (5th Cir. 1990).

Naturally, we must exercise caution in allowing the court to charge deliberate ignorance since it allows a jury to convict without finding actual awareness of the illegal conduct.  There is a possibility that the jury will convict for negligence or stupidity.  See Cartwright, 6 F.3d at 301; Lara-Velasquez, 919 F.2d at 951.[7]  As a result, courts should give the instruction rarely.  See Soto-Silva, 129 F.3d at 345; Cartwright, 6 F.3d at 301.  The facts warrant it only "when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference."  United States v. Posada-Rios, 158 F.3d 832, 875 (5th Cir. 1998) (quotation omitted); see also Soto-Silva, 129 F.3d at 345; Lara-Velasquez, 919 F.2d at 951.  If the defendant does not claim a lack of guilty knowledge, the court errs in providing the instruction.  See Cartwright, 6 F.3d at 301.

At trial, the Government agents testified that, when they inspected Moreno's luggage, the

_____

[6]The court charged, "You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed her eyes to what would otherwise have been obvious to her.  While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded herself to the existence of a fact."

[7]Moreno asserts that this risk was exacerbated by the court's "additional negligence type instruction that a person's intent could be inferred from the probable consequences of her conduct."  She provides no additional explanation; therefore, we summarily reject her argument.

black bags and briefcase were unusually heavy and that the briefcase smelled of glue. Moreno admitted that one of the empty bags was heavy. Moreno's defense contended that she was unaware of any cocaine in the luggage despite the weight. The instruction is appropriate where a defendant claims a lack of guilty knowledge and the evidence at trial supports an inference of deliberate indifference. See Faulkner, 17 F.3d at 767-68 (5th Cir. 1994). Thus, given Moreno's defense and the evidence indicating that the bags and briefcase contained contraband, the deliberate ignorance instruction was appropriate. See id.; United States v. Farfan-Carreon, 935 F.2d 678, 680-81 (5th Cir. 1991).

CONCLUSION

For these reasons, we affirm Moreno's conviction.