Kelly, J.
{dissenting). I find that the prosecutor in this case used defendant’s post-Miranda[1] silence against him. He asked a series of questions that compared and contrasted defendant’s refusal to submit to a police interview with the acquiescent responses of *584 other witnesses in similar circumstances. By doing so, the prosecutor submitted defendant’s post-Miranda silence to the jury as evidence from which it was allowed to draw an inference of guilt, thereby violating due process. Thus, I would affirm the Court of Appeals decision to reverse defendant’s convictions and hold that the trial court’s refusal to grant a mistrial was an abuse of discretion.
I. DOYLE AND ITS PROGENY
In finding no due process violation below, the majority takes solace in the fact that the prosecutor did not “use” defendant’s invocation of Miranda rights to impeach him. I think that this is an overly narrow view of due process protections.
A defendant’s due process right not to have his post-Miranda silence used against him exists in more situations than where a prosecutor uses the silence to impeach. To be sure, Doyle v Ohio[2] held that due process is violated where a prosecutor impeaches a defendant with evidence of his post-Miranda silence. But, the point of Doyle is “that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter . . . us[e] the silence to impeach [him]” or otherwise “make use of the . . . exercise of those rights in obtaining his conviction.” Wainright v Greenfield, 474 US 284, 292; 106 S Ct 634; 88 L Ed 2d 623 (1986). “What is impermissible is the evidentiary use of . . . his constitutional rights after the . . . assurance” of Miranda. Id. at 295.
*585 I believe that it is also fundamentally unfair, and therefore, a deprivation of due process, for the prosecution to use a defendant’s post-Miranda silence as affirmative proof at trial. This conclusion is consistent with that in several decisions that applied Doyle to references made to a defendant’s post-Miranda silence during the prosecution’s case in chief. See, e.g., United States v Moreno, 185 F3d 465, 473 (CA 5, 1999); People of Territory of Guam v Veloria, 136 F3d 648, 651-653 (CA 9, 1998); United States v Massuet, 851 F2d 111, 114 (CA 4, 1988); United States v Elkins, 774 F2d 530, 537 (CA 1, 1985); State v Treesh, 90 Ohio St 3d 460, 479; 739 NE2d 749 (2001).
The issue in this case is whether defendant’s trial was fundamentally unfair. It is whether the prosecutor used defendant’s post-Miranda silence against him so that it was submitted to the jury as evidence from which the jury could infer guilt.
n. THE PROSECUTION’S “USE” OF DEFENDANT’S TOSÍ-MIRANDA SILENCE
Although the majority acknowledges that Detective Cooper’s testimony was “inappropriate,” it nevertheless finds that there was no improper “use” of defendant’s postMiranda silence against him in this case. It cites the “limited nature” of the improper testimony and asserts that the prosecutor neither pursued the matter further nor raised the issue during oral argument. I disagree and maintain that the prosecutor did impermissibly use defendant’s post-Miranda silence against him.
In my view, the majority arrives at an erroneous conclusion in part because it fails to consider Detective Cooper’s testimony in context. With this in mind, *586 I will provide a brief review of the facts surrounding this case.
On the afternoon of August 23, 1997, defendant telephoned his grandmother and asked that she send someone to get him in an automobile. She sent her daughter, Nancy Kennebrew, and defendant’s half-sister, Evonne Ezell, in the grandmother’s van.[3] After defendant got into the van, Grand Rapids Police Officers Beckett and Anderson saw it fail to stop at a stop sign. They stopped the van and found that Ezell was driving, Nancy Kennebrew was in the passenger seat, and defendant was in the back seat apparently straddling a safe.
The officers asked permission to search the occupants. Defendant and Nancy Kennebrew refused, while Ezell agreed. Although no contraband was found on Ezell’s person, the officers detained her, directed Nancy Kennebrew and defendant to wait inside the officers’ cruiser, then searched the van. Inside, they discovered a locked safe, prompting them to call for assistance from a police dog to determine whether there were prohibited substances inside the safe. Meanwhile, while in the police cruiser, defendant kicked out its rear window. A subsequent search of the safe revealed a handgun, cocaine, marijuana, and a large amount of cash.
At trial, the prosecutor called Grand Rapids Detective Kent Cooper as an expert witness on the subject of controlled substances. After several preliminary questions, the trial court qualified him as an expert. Although one would expect the prosecutor then to *587 query him regarding his expert opinion on certain matters of evidence, the prosecutor opted not to do so immediately. Instead, he questioned Cooper regarding his investigation of the case and engaged in the following colloquy:
Q. [The prosecutor]: Detective, you in fact were the assigned detective for the investigation after the arrest of [defendant], is that correct?
A. [Cooper]: Correct.
Q. Can you tell the jury how you initially came into contact with this case?
A. I was assigned to the Vice Unit day team, and on the day team we are assigned the cases from the previous night of arrest or from the weekend prior to the day that we work.
Q. And this arrest occurred on Saturday afternoon, actually, of the 23rd of August?
A. Right, and on Monday I received the case.
Q. What type of investigation follow-up did you do with regard to this?

A. I went out and attempted to interview [defendant], and at that time it was refused. He wished to speak to an attorney prior to me asking him any questions.

Q. Did you speak with the other persons in this particular case?

A. I believe it was the next day that I went to the Ken-nebrew residence and spoke with Nancy Kennebrew, the younger one. I spoke with the grandmother, and I spoke with Evonne Ezell.

Q. And did they give you statements as to their knowledge or lack of knowledge of this incident?

A. Yes.

Q. And then you obtained warrants in this particular matter■?
A. Yes. [Emphasis added.]
*588 Cooper’s testimony unequivocally communicated to the jurors that defendant “refused” to submit to police questioning after his arrest and “wished to speak to an attorney” before answering any questions. Whereas the majority labels this as testimony of a “limited nature,” it is, in fact, an explicit statement that defendant invoked his Miranda rights. It enabled the jury to infer guilt from defendant’s silence, thereby violating his due process rights.[4]
Even if Cooper’s reference to defendant’s post-Miranda silence did not constitute a “use” of post-Miranda silence by itself, in subsequent questions the prosecutor did use defendant’s post-Miranda silence against him. Immediately after Cooper told the jury of the “refusal” to speak, the prosecutor asked Cooper if he spoke with “the other persons in this particular case.” Cooper related that he spoke with defendant’s grandmother, as well as Nancy Kennebrew and Evonne Ezell. The prosecutor then asked Cooper whether those witnesses gave statements to him. Cooper replied that they did, and then explained that those witnesses’ statements led to the issuance of arrest warrants.[5]
*589 Viewed in context, the prosecutor’s questions and Detective Cooper’s answers demonstrate how the prosecutor compared defendant’s willingness to be interviewed by police with the willingness of the other witnesses directly involved. The prosecutor conveyed that defendant refused to speak, but that others who were in the van when it was stopped, and the van’s owner, agreed to speak to police. Given that the others were initially implicated with the safe, questions regarding the degree of cooperation by defendant and the others in Cooper’s investigation implied that defendant’s silence evidenced guilt.[6]
Everything considered, I believe it reasonable to conclude that the prosecutor’s line of questioning was intended to call attention to defendant’s post-Miranda silence and use it against him. The tactics rendered the trial “fundamentally unfair.”[7]
*590 My conclusion is not altered by the cautionary instruction given in the instant case. A curative instruction does not always eradicate a due process violation brought about by the use of a defendant’s post-Miranda silence.[8] The instruction here did not address the prosecutor’s juxtaposition of defendant’s response to Cooper’s request for an interview and the other witnesses’ responses. Thus, notwithstanding the instruction, the effect of the comparison remained unassailed in the juiy’s perception. Therefore, the curative instruction does not preclude a finding that the prosecutor used defendant’s post-Miranda silence against him.[9]
The impermissible use of defendant’s post-Miranda silence in this case makes the majority’s reliance on Greer, supra, inapposite. Here, unlike in Greer, there was a series of questions and answers that focused on defendant’s post-Miranda silence.[10] Thus, there was actual testimony presented here that conveyed to the jury that defendant “refused” to speak to an investigating officer and wanted to speak to an attorney.
Additionally, the trial court in Greer gave two cautionary instructions; the trial court in the present case *591 gave merely one. See Greer, supra at 759. The trial court’s instructions in Greer did not specifically mention the earlier impropriety.[11] By contrast, here the trial court’s instruction expressly cited Cooper’s improper testimony, highlighting the earlier testimonial error and reminding the jury of defendant’s refusal to submit to a police interview.
Finally, unlike in Greer, the record here supports the conclusion that there was an improper use of defendant’s post-Miranda silence against him. Here, the prosecutor highlighted for the jury the fact that defendant chose not to speak to an investigating officer, whereas other persons, possibly associated with the safe, did speak. Because there was a far greater burdening of defendant’s rights in the instant case than in Greer, I believe that the majority errs in finding Greer analogous. See Moreno, supra at 474, limiting Greer to cases wheré no answer is given to an improper question; Newman, supra at 1157-1158.
I would find the prosecutor’s use of defendant’s post-Miranda silence violative of due process and the trial court’s refusal to grant a mistrial an abuse of its discretion.[12]
*592 in. CONCLUSION
The prosecutor used defendant’s post-Miranda silence against him by calling the jury’s attention to it and by inferring defendant’s guilt from it. This rendered defendant’s trial “fundamentally unfair” and violated defendant’s due process rights. Thus, I would affirm the Court of Appeals decision to reverse defendant’s convictions.
Cavanagh, J., concurred with Kelly, J.

 Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

 426 US 610, 618; 96 S Ct 2240; 49 L Ed 2d 91 (1976).

 Defendant’s grandmother and her daughter are both named “Nancy Kennebrew.” To help avoid confusion, I will refer to the elder Kennebrew as “the grandmother,” and the junior Kennebrew as “Nancy Kennebrew.”

 Contrary to the majority’s inherent suggestion, a single improper comment about a defendant’s post-Miranda silence may rise to the level of a due process violation. See Moreno, supra at 473; Veloria, supra at 651-653; Lindgren v Lane, 925 F2d 198, 203 (CA 7, 1991); United States v Stubbs, 944 F2d 828, 835 (CA 11, 1991); Booton v Hanauer, 541 F2d 296, 298-299 (CA 1, 1976). Greer v Miller, 483 US 756; 107 S Ct 3102; 97 L Ed 2d 618 (1987), does not hold otherwise. See id. at 764, n 5, rebutting the dissent’s contention that the Court held that “a single comment cannot be sufficient to constitute a Doyle violation,” id. at 770 (Brennan, Blackmun, and Marshall, JJ., dissenting). Indeed, the Court in Greer explained that the lack of a violation there stemmed from the “sequence of events,” not the fact that there was but one comment. See id. at 764-765.

 The majority interprets the prosecutor’s follow-up questions regarding Cooper’s interview with the other witnesses as constituting the real aim of *589 the prosecutor’s question to Cooper regarding his “investigation followup.” I find this interpretation unpersuasive. See United States v Baker, 999 F2d 412, 416 (CA 9, 1993), stating that counsel’s “subjective intent cannot save his overly broad statements.” The majority glosses over the fact that the entire series of questions and answers contrasted defendant’s and the other witnesses’ degree of cooperation in front of the jury.

 Apparently, Nancy Kennebrew was charged at one point with possession of the safe’s contents.

 See Moreno, supra at 473-474, finding error where the prosecutor’s question’s “natural consequence, if not purpose,” was to draw meaning from the defendant’s post-Miranda silence; Velorta, supra at 652, finding Doyle error after reviewing entire context of improper testimony; Elkins, supra at 537, a “Doyle violation occurs not only when the objectionable comments explicitly refer to a defendant’s failure to answer questions . . . but when the reference to defendant’s silence is more oblique . . . United States v Newman, 943 F2d 1155, 1158 (CA 9, 1991), finding error requiring reversal where the effect of a police officer’s statements, “intended or otherwise, was to suggest to the jury that [the defendant] must have been guilty because an innocent person would not have remained silent”; State v DiGuilio, 491 So 2d 1129, 1131 (Fla, 1986), it was constitutional error for a police officer to give testimony that was “fairly susceptible of being interpreted by the jury as a comment on silence.”

 See Newman, supra at 1156-1157, finding a Doyle violation despite two cautionary instructions.

 In effect, the majority’s reliance on the trial court’s curative instruction merely ensures that improper testimony like that submitted here will be admitted in other criminal trials in Michigan. When it occurs, the trial court may give the same curative instruction that was given here, anticipating no error requiring reversal.

 The majority explains its conclusion that there was no “use” against defendant of his post-Miranda silence by stating that Cooper’s testimony “did not state that defendant absolutely refused to be interviewed by the police, but rather only that he wanted to speak to an attorney before being questioned.” Ante at 583 and 582, n 12.1 find it a distinction without a difference. Also, the majority ignores the preceding sentence where Cooper stated that his request to interview defendant was “refused.”

 In Greer, the trial court’s first instruction directed the jury to “ignore [the] question, for the time being.” Id. at 759. The second instruction informed the jury to “disregard questions ... to which objections were sustained.” Id.

 The majority’s reliance on Stubbs, supra, is unavailing. Stubbs did not involve, as here, a prosecutor engaging in a specific comparison of defendant’s and other witnesses’ willingness to speak to police, or a cautionary instruction that expressly reminded the jurors of the improper reference to defendant’s post-Miranda silence. Id. at 835. Also, the improper testimony in Stubbs came from a civilian witness; here, the improper testimony came from a police officer and, thus, is subject to greater scrutiny. See People v Holly, 129 Mich App 405, 415-416; 341 NW2d 823 (1983).