**REVISED DECEMBER 16, 1998**
**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 97-50663

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARINA MEDINA; MARCO ANTONIO MARTINEZ; JAVIER
ALBERTO DELGADO,

Defendants - Appellants.

---

Appeals from the United States District Court
For the Western District of Texas

---

November 23, 1998

Before POLITZ, Chief Judge, EMILIO M. GARZA, and STEWART, Circuit
Judges.

EMILIO M. GARZA, Circuit Judge:

Marina Medina ("Medina"), Marco Antonio Martinez and Javier

Alberto Delgado appeal their convictions and sentences. Finding no

reversible error, we affirm.

I

This prosecution concerned the smuggling of cocaine and

marijuana into the United States through ports of entry at El Paso,

Texas. Each individual smuggling operation (called a "crossing")

began in Juarez, Mexico, with the loading of hundreds of kilograms of cocaine or marijuana into the trunk of a car. After receiving a pager message from a scout that identified the traffic lane posing the least obstacle to entry, a man drove the vehicle to the United States Customs Service checkpoint. He was told what the car contained before departing and knew to speed off if diverted to a Customs Service inspection station. After arriving in El Paso, he left the car at a designated location and was given a ride back to Juarez.

United States law enforcement officials learned about the "crossings" and began to intercept many of them. Believing that customs officers were less likely to detain cars occupied by a male and a female, the smugglers responded by recruiting two sisters, Marina and Patty Medina, to ride in vehicles making "crossings." They also became more daring. For example, on one occasion, a convoy of seven automobiles carrying cocaine and marijuana proceeded into the United States across the Stanton Street Bridge, which runs only from El Paso to Juarez ("Stanton Street Bridge episode").

Law enforcement officials eventually dismantled the smuggling organization. Their success was due largely to the cooperation of Carlo Gonzalez, who was arrested hours after the Stanton Street Bridge episode while driving a car carrying 370.14 kilograms of cocaine.

An indictment was returned against some of the smugglers. It

-2-

alleged that Medina, Martinez, Delgado and others had conspired to possess cocaine and marijuana with intent to distribute, in violation of 21 U.S.C. § 846, and had conspired to import cocaine and marijuana into the United States, in violation of 21 U.S.C. § 963. Based on their participation in the Stanton Street Bridge episode, Delgado and others were charged with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and with importing cocaine into the United States, in violation of 21 U.S.C. § 952(a).

Medina, Martinez and Delgado were convicted of all charges. Following sentencing and entry of judgment, each of them timely appealed.

## II

Medina challenges the denial of her attorney's motion to withdraw as violative of her Sixth Amendment right to conflict-free counsel.[1] Federal public defender Maureen Scott represented Medina. Another federal public defender, Elizabeth Rogers, was counsel for Jose Quiroz, a Government witness.[2] Scott and Rogers

---

[1] "Where a constitutional right to counsel exists, [the Supreme Court's] . . . Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S. Ct. 1097, 1103, 67 L. Ed. 2d 220, ___ (1981). "A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Carpenter,* 769 F.2d 258, 263 (5th Cir. 1985).

[2] Although the Government planned for Quiroz to testify at trial, it never called him as a witness. Quiroz did provide information that served as the basis for the offense level that the probation officer recommended for Medina. *See infra* p. 15.

learned about their office's representation of Medina and Quiroz about a week before Medina's trial.  On the day of this discovery, Scott and Rogers both sought to withdraw, arguing that the federal public defender's simultaneous representation of Medina and Quiroz created a conflict of interest.  At a hearing on her motion, Scott said that she knew nothing about Quiroz's case.  The district judge refused to allow Scott to withdraw.  Rogers, however, was permitted to end her representation of Quiroz.[3]

We review the denial of defense counsel's motion to withdraw based on a conflict of interest for abuse of discretion.  *See United States v. Wild,* 92 F.3d 304, 307 (5th Cir.), *cert. denied,* ___ U.S. ___, 117 S. Ct. 532, 136 L. Ed. 2d 417 (1996).  This process involves three steps.  We first decide whether or not an actual conflict of interest existed.  *See United States v. Rico,* 51 F.3d 495, 508 (5th Cir. 1995).  If one did, we then determine whether or not the defendant knowingly, intelligently and voluntarily waived it.[4]  *See id.*  If a valid waiver occurred, we finally consider whether or not the district judge should have accepted it, for a valid waiver must be rejected if allowing representation to continue undermines the judicial system's integrity.  *See id.*

---

[3]     Quiroz's case was before a different district judge. Rogers' motion to withdraw was granted minutes before Scott's motion to withdraw was denied.

[4]     For discussion of how a defendant waives her lawyer's conflict of interest, see *United States v. Garcia,* 517 F.2d 272, 277-78 (5th Cir. 1975).

-4-

The denial of Scott's motion to withdraw was not an abuse of discretion.  Relevant events show that Scott never faced an actual conflict of interest.  Scott and Rogers were ignorant of the federal public defender's ongoing representation of Medina and Quiroz.[5]  *See* MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.10(a) (1983) (rule on imputed disqualification: "While lawyers are associated in a firm, none of them shall *knowingly* represent a client when any one of them practicing alone would be prohibited from so doing by Rules 1.7, 1.8(c), 1.9 or 2.2." (emphasis added)).  When they realized the situation, they immediately moved to withdraw.  *Cf. LaSalle Nat'l Bank v. County of Lake,* 703 F.2d 252, 259 (7th Cir. 1983) (upholding disqualification of entire law firm where law firm had not implemented in a timely manner institutional mechanisms to screen former attorney of client's adversary from the case).  Although Scott was unable to do so, Rogers secured permission to terminate her representation.  *Cf. United States v. Trevino,* 992 F.2d 64, 65-66 (5th Cir. 1993) (finding no actual conflict where public defender began to work for defendant after prosecution of co-defendant represented by another public defender had ended).  As Scott knew none of the confidences that Quiroz had exchanged with Rogers, she then was able to continue as Medina's attorney without the burden of a conflict.  *See United States v. Lech,* 895 F. Supp.

---

[5]     Scott never faced the dilemma of multiple representation because she only worked for Medina.  *See Vega v. Johnson,* 149 F.3d 354, 357 (5th Cir. 1998) (explaining multiple representation).

-5-

586, 590-91 (S.D.N.Y. 1995) (finding no actual conflict where public defender was ignorant of confidences Government witness had shared with his former attorney, another public defender); *cf.* *LaSalle Nat'l Bank,* 703 F.2d at 257 ("If the attorney can clearly and persuasively show that he was not privy to the confidences and secrets of [the former] client, a court will not be held to have abused its discretion in concluding that disqualification [of the attorney from representing the former client's adversary] is unnecessary. . . ."). Therefore, the district judge did not abuse his discretion in denying Scott's motion to withdraw as Medina's counsel.

### III

Martinez and Delgado assert that the denial of their motion to disqualify a juror violated their Sixth Amendment right to an impartial jury. *See* U.S. Const. amend. VI. A juror sent the following note to the district judge on the last day of trial:

> As I was hearing the defense attorneys I heard that two of the people att: Jefferson H.S I - [misspelled word crossed out] attened [sic] same school & graduated from Jeff in 1991 Would my presence affect me personally - or family I have no acquaintance with them

In response, the district judge and defense counsel questioned the juror. The juror explained that he had worried about retaliation when he realized that he must have attended school with Medina and recognized one of the witnesses testifying on Medina's behalf as a former classmate. However, he added that his concern had

-6-

dissipated and would not affect his decision. Despite this assurance, Martinez and Delgado moved for the juror to be excused. The district judge denied the request.

We review for clear abuse of discretion a decision on whether or not to dismiss a juror for lack of impartiality. *See United States v. Graves,* 5 F.3d 1546, 1554 (5th Cir. 1993). We find no error here. In response to inquiries by the district judge and defense counsel, the juror declared that he could be fair because he no longer feared retaliation. *See id.* at 1553-54 (finding no abuse of discretion in refusing to dismiss juror who, in response to questioning by the district court, stated that an attack on her husband while in a vehicle registered in her name had not affected her impartiality); *cf. United States v. Ruggiero,* 928 F.2d 1289, 1294-97, 1300 (2d Cir. 1991) (finding no abuse of discretion in dismissal of juror who stated that his vote was motivated by fear); *United States v. McAnderson,* 914 F.2d 934, 943-44 (7th Cir. 1990) (finding no abuse of discretion in removal of jurors who reported having received threatening telephone calls regarding the case). The district judge did not abuse his discretion in refusing to dismiss the juror.

IV

Martinez maintains that a material variance between the indictment's conspiracy counts and the evidence requires the reversal of his conspiracy convictions. At trial, the Government

-7-

presented evidence connecting Martinez to approximately 600 kilograms of marijuana seized in Akron, Ohio. Martinez asserts that this evidence resulted in the Government proving two conspiracies rather than just the one alleged in the indictment, a situation that severely prejudiced him.

We analyze in two phases the contention that a variance between the indictment's charge of a single conspiracy and the evidence is material. We first decide if the evidence varied from the indictment's allegations. *See United States v. Puig-Infante,* 19 F.3d 929, 935-36 (5th Cir. 1994). When we find a variance between the indictment's allegations and the evidence, we also consider whether or not the variance prejudiced the defendant's substantial rights. *See id.* at 936. If we find that the variance prejudiced the defendant's substantial rights, then we reverse the conviction. *See United States v. Johnson,* 68 F.3d 899, 903 (5th Cir. 1995).

There was no material variance. The Government presented evidence that connected the marijuana seized in Akron to the smuggling operation. Moreover, even if the marijuana seized in Akron went to a conspiracy distinct from the conspiracy alleged, the rest of the evidence sufficed to convict Martinez on the conspiracy counts.[6] As we have said, "[W]hen the indictment alleges the conspiracy count as a single conspiracy, but the

---

[6] For a rendition of the other evidence sufficient by itself to sustain Martinez's conspiracy convictions, see *infra* pp. 9-11.

-8-

government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting that defendant's substantial rights." *United States v. Limones,* 8 F.3d 1004, 1009-10 (5th Cir. 1993) (internal quotations omitted) (finding introduction of evidence relating to other drug activities non-prejudicial even if it, in fact, showed other, discrete conspiracies). Martinez's contention of a material variance, therefore, is unavailing.

V

Martinez and Delgado appeal the denial of their motions for a judgment of acquittal. A motion for a judgment of acquittal challenges the sufficiency of the evidence to convict. *See* FED. R. CRIM. P. 29(a). We review the denial of this motion *de novo. See United States v. Greer,* 137 F.3d 247, 249 (5th Cir.), *cert. denied,* ___ U.S. ___, 118 S. Ct. 2005, 141 L. Ed. 2d 164 (1998). In doing so, we consider the evidence, all reasonable inferences drawn from it and all credibility determinations in the light most favorable to the Government, and affirm if a reasonable jury could find the offense's essential elements beyond a reasonable doubt. *See United States v. Mulderig,* 120 F.3d 534, 546 (5th Cir. 1997), *cert. denied,* ___ U.S. ___, 118 S. Ct. 1510, 140 L. Ed. 2d 664 (1998); *United States v. Westbrook,* 119 F.3d 1176, 1189 (5th Cir. 1997), *cert. denied,* ___ U.S. ___, 118 S. Ct. 1059, 140 L. Ed. 2d 121 (1998), *and cert. denied,* ___ U.S. ___, 118 S. Ct. 1060, 140 L. Ed.

2d 121 (1998).

A

Martinez and Delgado dispute the sufficiency of the evidence underlying their conspiracy convictions. To establish a conspiracy under either 21 U.S.C. § 846 or § 963, the Government must prove beyond a reasonable doubt (1) that an agreement existed between two or more persons to violate the applicable narcotics law (i.e., a conspiracy existed), (2) that each alleged conspirator knew of the conspiracy and intended to join it and (3) that each alleged conspirator participated (*i.e.,* joined) voluntarily in the conspiracy. *See United States v. Paul,* 142 F.3d 836, 839-40 (5th Cir.), *cert. denied,* ___ U.S. ___, 119 S. Ct. 271, ___ L. Ed. 2d ___ (1998); *United States v. Hernandez-Palacios,* 838 F.2d 1346, 1348 (5th Cir. 1988); *see also United States v. Brito,* 136 F.3d 397, 409 (5th Cir. 1998) (reciting elements of conspiracy to possess marijuana with intent to distribute and elements of conspiracy to import marijuana). It can prove a conspiracy by circumstantial evidence alone. *See Westbrook*, 119 F.3d at 1189. "As long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution or leniency, may be constitutionally sufficient evidence to convict." *Id.* at 1190.

Martinez argues that his convictions cannot stand because they

-10-

rest on "unsubstantiated and unreliable" evidence))Gonzalez's testimony. This contention lacks merit. Gonzalez disclosed the following: (1) how a "crossing" worked; (2) Martinez served as scout; (3) Martinez went on two "crossings" with Gonzalez; (4) Martinez owned some of the drugs transported into the United States; (5) Martinez provided Gonzalez with drugs to smuggle; and (6) Martinez retrieved drivers in El Paso after "crossings." The jury believed Gonzalez. As Gonzalez's testimony was neither factually insubstantial nor incredible, this choice must be respected.[7] *See United States v. Landerman,* 109 F.3d 1053, 1067-68 (5th Cir.) (finding evidence sufficient to convict because jury credited co-conspirator's testimony that was neither factually impossible nor incredible), *cert. denied,* ___ U.S. ___, 118 S. Ct. 638, 139 L. Ed. 2d 616 (1997); *United States v. Greenwood,* 974 F.2d 1449, 1458 (5th Cir. 1992) (finding evidence sufficient to convict because coconspirator's testimony, although inconsistent on some points, was neither insubstantial nor incredible). Gonzalez's credited testimony sufficed to convict Martinez for violating §§ 846 and 961. We, therefore, hold that the district judge did not err in denying Martinez's motion for a judgment of acquittal on the

---

[7] To bolster Gonzalez's testimony, the Government elicited from law enforcement officers reasons why they found him credible. Law enforcement officers, for example, reported that information obtained from wiretaps and confidential informants corroborated Gonzalez's statements. *See United States v. Hickman,* 151 F.3d 446, 455 (5th Cir. 1998) (finding sufficient evidence of guilt where Government offered evidence to corroborate cooperating co-defendant's testimony that defendant participated in the conspiracy).

conspiracy counts.

Delgado deems the evidence insufficient to sustain his conspiracy convictions because it proved neither that his work as a smuggler occurred during the alleged period of the conspiracy nor that he knew the contents of the vehicles in which he rode into the United States. The evidence, however, refutes these contentions. Gonzalez's testimony established that Delgado joined the smuggling organization as a driver during the timeframe of the conspiracies. Moreover, Gonzalez reported that the drivers were told what they were hauling before leaving on a "crossing." Therefore, contrary to what Delgado claims, the evidence placed him in the conspiracy during the relevant period and established his knowledge of the cargo in the automobiles in which he traveled. We reject his challenge to the denial of his motion for a judgment of acquittal on the conspiracy counts.

B

Delgado also considers the evidence insufficient to convict for possession of cocaine with intention to distribute and for importation of cocaine, arguing that no evidence placed cocaine in the vehicle in which he traversed the Stanton Street Bridge.[8] To establish possession of cocaine with intent to distribute, the Government must prove beyond a reasonable doubt that the defendant (1) knowingly (2) possessed cocaine (3) with intent to distribute

---

[8] At trial, Delgado tried to show that Gonzalez, in conversations with law enforcement officers, had tied him to a car carrying marijuana.

it. *See United States v. Hunt,* 129 F.3d 739, 742 (5th Cir. 1997); *United States v. Molinar-Apodaca,* 889 F.2d 1417, 1423 (5th Cir. 1989). To show importation of cocaine, the Government must prove beyond a reasonable doubt that the defendant (1) played a role in bringing a quantity of cocaine into the United States from outside of the United States, (2) knew that the cocaine was a controlled substance and (3) knew that the cocaine would enter the United States. *See United States v. Casilla,* 20 F.3d 600, 603 (5th Cir. 1994).

The evidence was sufficient to sustain Delgado's convictions. The district judge instructed the jury that it could find Delgado guilty of a substantive offense if it found him guilty of the corresponding conspiracy and if it found beyond a reasonable doubt that, during the time he was a member of the conspiracy, his fellow conspirators committed the substantive offense in furtherance of or as a foreseeable consequence of the conspiracy, even though he may not have participated in any of the acts that constituted the substantive offense.[9] Testimony supported Delgado's conviction for both possession and importation under this theory. It showed the

---

[9] The district judge's instruction, recited as to each substantive offense, followed *Pinkerton v. United States,* 328 U.S. 640, 645-47, 66 S. Ct. 1180, 1183-84, 90 L. Ed. 1489, ____ (1946), which held that "a party to a conspiracy may be held responsible for a substantive offense committed by a coconspirator in furtherance of a conspiracy, even if that party does not participate in or have any knowledge of the substantive offense." *United States v. Jensen,* 41 F.3d 946, 955-56 (5th Cir. 1994) (internal quotations omitted); *see also United States v. Rosado-Hernandez,* 614 F.2d 50, 53-54 (5th Cir. 1980) (citing *Pinkerton* in holding that co-conspirator's possession of cocaine established guilt of defendant claiming never to have controlled cocaine physically).

following: (1) Delgado's participation in a conspiracy to possess cocaine with the intent to distribute and in a conspiracy to import cocaine; (2) the Stanton Street Bridge episode involved cocaine; (3) Delgado participated in the Stanton Street Bridge episode; and (4) the Stanton Street Bridge episode was in furtherance of each conspiracy. The collective effect of this evidence, in light of the theory of guilt, renders unimportant whether or not cocaine was in the car in which Delgado rode across the Stanton Street Bridge. Therefore, we find no error in the district judge's denial of Delgado's motion for a judgment of acquittal as to the possession and importation charges.

## VI

Medina claims that the district judge should have based her sentence on the marijuana, not the cocaine, attributable to her.[10] The district judge instructed the jury to convict if it found Medina had conspired to possess cocaine or marijuana with intent to distribute. Likewise, he told the jury to convict if it found Medina had conspired to import cocaine or marijuana. The jury returned a general verdict of guilty as to both conspiracy charges against Medina. Medina argues that this situation implicates *United States v. Bounds,* 985 F.2d 188, 194-95 (5th Cir. 1993), which held that a sentence must reflect the illegal drug carrying

---

[10]    The quantity of narcotics determines the base offense level in a case such as this one, where the drug trafficking crime involved neither serious bodily injury nor death. *See* U.S.S.G. § 2D1.1(a)(3).

-14-

the lowest offense level if a general verdict leaves unclear the illegal drug to which the jury has tied the defendant. As the offense level for marijuana is lower than that for cocaine, she posits that *Bounds* required the district judge to base her sentence on the marijuana, not the cocaine, attributable to her.

Medina's challenge comes too late. In *Edwards v. United States,* ___ U.S. ___, ___, 118 S. Ct. 1475, 1476-77, 140 L. Ed. 2d 703, ___ (1998), the Supreme Court rejected *Bounds* and held that the district judge, not the jury, determines the controlled substances linked to a drug conspiracy for sentencing purposes. We, consequently, hold that the district judge committed no error in sentencing Medina based on the cocaine, rather than the marijuana, attributed to her.[11] *See United States v. Riley,* 142 F.3d 1254, 1256-57 (11th Cir. 1998) (following *Edwards*).

VII

Medina, Martinez and Delgado maintain that the district judge failed to resolve factual disputes in accordance with Federal Rule of Criminal Procedure 32(c)(1), which requires the district judge at a sentencing hearing to make either a finding on each controverted matter or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, the sentencing. *See* FED. R. CRIM. P. 32(c)(1).

---

[11] For discussion of the facts underlying the district judge's decision to base Medina's sentence on a quantity of cocaine, see *infra* note 13.

-15-

We review the district judge's implementation of Rule 32(c)(1) *de novo.* *See United States v. Myers,* 150 F.3d 459, 465 (5th Cir. 1998).

A

Medina objected to the Presentence Report ("PSR") using her participation in a "crossing" involving 288.49 kilograms of cocaine to justify setting her offense level at thirty-eight. She claimed that the evidence showed her smuggling work ending before the shipment of the 288.49 kilograms of cocaine. The district judge refused to consider the 288.49 kilograms of cocaine in figuring Medina's sentence. However, he still set Medina's offense level at thirty-eight, giving the following explanation for this decision:

> Elsewhere in the presentence report there is a discussion of her overall role and various aspects of her participation in the organization over a period of time. And I think that, were it me, I would have said that the . . . offense level is calculated on the basis of a minimum of 150 kilograms. Because that's the significant figure. That's the level that brings us to an offense level of 38. And as I say, using 288.4 kilograms so specifically makes it appear like that's just related to one particular load. And I want to make clear that my ruling is not based on that, but, rather, on her rather significant role in a major conspiracy to smuggle cocaine. And I find from a preponderance of the evidence that certainly at least 150 kilograms of cocaine is attributable to her as relevant conduct, and therefore the . . . offense level is 38.

Medina argues that the district judge violated Rule 32(c)(1) because he failed to resolve her objections to the PSR's attributing the 288.49 kilograms of cocaine to her. We disagree. The district judge, in accordance with Rule 32(c)(1), explicitly

-16-

refused to use the 288.49 kilograms of cocaine as the factual basis for pegging the offense level at thirty-eight. *See United States v. Lawal,* 810 F.2d 491, 493 n.2 (5th Cir. 1987) (indicating that the district court's decision "'not to take into account'" a part of the PSR to which the defendant objected was sufficient to comply with Rule 32(c)(3)(D)).[12]  He, moreover, chose to rely on other facts in the PSR, which he was free to do as Medina raised no objection to them.[13]  *See United States v. Hare,* 150 F.3d 419, 426 (5th Cir. 1998); *see also United States v. Escudo-Moreno,* 56 F.3d 578, 581 (5th Cir. 1995) ("a matter becomes 'controverted' . . . only after there is an 'unresolved objection'").  Because of these circumstances, Medina's argument that the district judge violated Rule 32(c)(1) lacks merit.[14]

B

Martinez objected to the PSR attributing at least 150 kilograms of cocaine to him to support an offense level of thirty-eight.  The following analysis in the PSR explained why Martinez was deemed responsible for at least 150 kilograms of cocaine:

---

[12]    Federal Rule 32(c)(3)(D) was renumbered 32(c)(1) in 1994.  *See* FED. R. CRIM. P. 32(c) advisory committee's note (1994).

[13]    The district judge concluded that Medina was responsible for at least 150 kilograms of cocaine based on the following facts in the PSR: (1) the smuggling operation primarily involved cocaine; (2) Medina admitted that she was involved in fifteen "crossings"; and (3) the smallest cocaine seizure was 219.99 kilograms.

[14]    As the district judge based his calculation on facts other than the 288.49 kilograms of cocaine, we need not consider Medina's claim that the evidence regarding the 288.49 kilograms was unreliable.

Based on trial testimony and statements provided by cooperating co-conspirators, Martinez can be held accountable for at least three loads of narcotics. One load, which belonged to Martinez, was verified to be cocaine by Gonzalez. If only one of the other two loads which Martinez drove with Gonzalez was cocaine, Martinez would be accountable for at least two loads of cocaine. Using the smallest cocaine seizure of 485 pounds (219.99 kilograms), Martinez could conceivably be held accountable for 970 pounds (439.99 kilograms) of cocaine. Therefore, given the extent of Martinez's involvement in the offense, it appears that the amount of cocaine attributed to him, 150 kilograms, is a very conservative estimate of the actual amount of cocaine which he could be held accountable for.

Martinez maintained that the evidence failed to justify his sentence because it disclosed neither the time of his two "crossings" with Gonzalez nor the kinds and amounts of drugs involved in those "crossings." After hearing this objection and briefly discussing two other prosecutions against Martinez involving cocaine, the district judge overruled the objection, stating:

And I think clearly the preponderance of the evidence does support and justify the conclusions in the [PSR] . . . as to the offense levels, the quantities, et cetera. And Mr. Martinez's history of involvement with cocaine certainly corroborates those calculations, although those are separate cases that are pending in these other courts. But I still think the objections you've interposed should be overruled, and I'll stand by the calculations in the [PSR] . . . as to his offense level.

Martinez contends that the district judge's disposition of his objection was too cursory to comply with Rule 32(c)(1). However, the district judge's conduct fully accorded with the rule. *See United States v. Webster,* 960 F.2d 1301, 1310 (5th Cir. 1992) ("the

-18-

sentencing court may satisfy Rule 32(c)(3)(D) by rejecting a defendant's objection and orally adopting the PSR's finding"); *see also United States v. Brown,* 29 F.3d 953, 957-58 (5th Cir. 1994) (rejecting the argument that the statement, "The court adopts the factual statements contained in the [PSR] . . . as to which there were no objections, and as to the objection the Court has overruled those objections," failed to satisfy Rule 32(c)(3)(D)). We, therefore, find no Rule 32(c)(1) violation as to Martinez.

C

Finally, Delgado objected to the PSR attributing to him the 370.14 kilograms of cocaine Gonzalez transported in the Stanton Street Bridge episode so as to justify an offense level of thirty-eight. He asserted that his sentence had to derive from the unspecified amount of marijuana that, according to Gonzalez's testimony at trial, was in the car in which he had ridden across the bridge. The district judge overruled this objection, stating:

> I think the evidence as a whole, the preponderance of credible evidence, is to the effect that Mr. Delgado was significantly involved in this organization that was smuggling in vast amounts of cocaine, and that the calculation in the [PSR] . . . which attributes something like 300 kilograms of cocaine to him is quite sound, if not conservative. And, so, I will overrule your objection to the calculation in the [PSR] . . . .

Like Martinez, Delgado perceives this response to his objection as being too brief to satisfy Rule 32(c)(1). And, once again, we conclude otherwise. *See, e.g., Brown,* 29 F.3d at 957-58.

VIII

-19-

Martinez and Delgado contest the amounts of narcotics attributed to them for the purpose of sentencing. When the defendant has participated in a drug conspiracy, the quantity of drugs attributable to him "includes both the drugs with which the defendant was directly involved and the drugs that can be attributed to him through the conspiracy." *Brito,* 136 F.3d at 415. The weight derived from the conspiracy is the amount that the defendant knew or reasonably should have known or believed was involved in the conspiracy (*i.e.,* the quantity reasonably foreseeable). *See id.* The amount, moreover, need not be limited to the actual quantities seized; the district judge can make an estimate. *See* U.S.S.G. § 2D1.1, comment (n.12) (stating that the quantity of drugs can be estimated when no drug seizure occurs or the amount seized does not reflect the scale of the offense).

We review drug quantity determinations, as findings of fact, for clear error. *See United States v. Kelley,* 140 F.3d 596, 609 (5th Cir.), *cert. denied,* ___ U.S. ___, 119 S. Ct. 186, ___ L. Ed. 2d ___ (1998), *and cert. denied,* ___ U.S. ___, 119 S. Ct. 247, ___ L. Ed. 2d ___ (1998). A preponderance of evidence must support them. *See United States v. Leal,* 74 F.3d 600, 607 (5th Cir. 1996). The evidence, which need not be admissible at trial, must possess "sufficient indicia of reliability to support its probable accuracy." *Kelley,* 140 F.3d at 609 (internal quotations omitted). In this regard, the district judge "may adopt facts contained in

the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United States v. Alford,* 142 F.3d 825, 832 (5th Cir. 1998), *petition for cert. filed,* 67 U.S.L.W. 3284 (Oct. 13, 1998) (No. 98-626).

A

Martinez argues that the PSR attributing at least 150 kilograms of cocaine to him was "speculative" because Gonzalez's testimony at trial failed to disclose either the type or amount of drugs involved in the two "crossings" he made with Gonzalez. The PSR on Martinez reported the following: (1) Martinez was part of at least three "crossings," one of which was known to have involved cocaine; (2) the smuggling enterprise primarily involved cocaine; and (3) the smallest cocaine seizure was 219.99 kilograms. These facts coalesced to permit an inference that Martinez was responsible for at least 150 kilograms of cocaine. *Cf. Brito,* 136 F.3d at 417 (calling the product of the number of loads and the estimated minimum weight per load "the most conservative calculation" of the amount of drugs); *United States v. Beler,* 20 F.3d 1428, 1434 (7th Cir. 1994) (holding that the product of the approximate amount of weekly or monthly cocaine purchases and the number of weeks or months of involvement "is an acceptable method of estimating drug quantity"). We, therefore, hold that the district judge's estimate of the amount of drugs attributable to

Martinez was not clearly erroneous.

B

Delgado decries the PSR holding him accountable for 370.14 kilograms of cocaine transported by Gonzalez as part of the Stanton Street Bridge episode when Gonzalez's trial testimony placed him in a vehicle hauling an unspecified amount of marijuana. The facts in the PSR disclosed the following: (1) the smuggling operation primarily involved cocaine; (2) Delgado participated in the Stanton Street Bridge episode; and (3) 370.14 kilograms of cocaine was found in Gonzalez's car hours after the Stanton Street Bridge episode. An inference arose from these facts that Delgado reasonably foresaw the smuggling operation to involve 370.14 kilograms of cocaine. We, consequently, hold that the district judge's estimate of the amount of drugs attributable to Delgado was not clearly erroneous.

IX

Based upon the foregoing discussion, we AFFIRM the convictions and sentences of Medina, Martinez and Delgado.