EMILIO M. GARZA, Circuit Judge,
concurring in part and dissenting in part:
I concur with the majority opinion except that I conclude that the evidence was sufficient to sustain Luis’s convictions. Thus, I respectfully dissent as to Part III.
At trial, Luis moved for a judgment of acquittal at the end of the Government’s case, and he renewed the objection at the close of his case. The district judge denied both motions. A jury convicted Luis of possession of marijuana with intent to distribute, under 21 U.S.C. § 841(a)(1), and of conspiracy to possess marijuana with intent to distribute, under 21 U.S.C. § 846. Luis appeals the denial of his motion for a judgment of acquittal. We review the denial of a motion for a judgment of acquittal de novo. See United States v. Medina, 161 F.3d 867, 872 (5th Cir.1998), cert. denied, — U.S. -, 119 S.Ct. 1344, 143 L.Ed.2d 507 (1999).
*691 Luis disputes the sufficiency of the evidence to support his drug convictions. In reviewing challenges to the sufficiency of the evidence, we consider the evidence, all reasonable inferences drawn from it, and all credibility determinations in the light most favorable to the Government. See Medina, 161 F.3d at 872; United States v. Brito, 136 F.3d 397, 408 (5th Cir.), cert. denied, — U.S. -, 119 S.Ct. 159, 142 L.Ed.2d 130 (1998). “[W]e determine only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence.” United States v. Miller, 146 F.3d 274, 280 (5th Cir.1998). We affirm if a rational jury could find the offense’s essential elements beyond a reasonable doubt. See Medina, 161 F.3d at 872. Luis argues that there was insufficient evidence to support the knowledge element required for his conspiracy and possession convictions.[1] I disagree.
The court charged the jury that a defendant has knowledge if he acts “voluntarily and intentionally.” The court also instructed the jury that knowledge could be inferred from deliberate ignorance:[2]
You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless or foolish, knowledge can be inferred if the defen-, dant deliberately blinded himself to the existence of a fact. If you find, however, that the defendant actually believed that this transaction did not involve marijuana, then you must acquit the defendant.
See United States v. Restrepo-Granda, 575 F.2d 524, 529 (5th Cir.1978) (concluding that “deliberate ignorance is the equivalent of knowledge under the statutes here involved” (referencing 21 U.S.C. § 841(a)(1))). “Courts ... have determined that the circumstances of the defendant’s involvement in the criminal offense may have been so overwhelmingly suspicious that the defendant’s failure to question the suspicious circumstances establishes the defendant’s purposeful contrivance to avoid guilty knowledge.” United States v. Lara-Velasquez, 919 F.2d 946, 952 (5th Cir.1990); see also United States v. Rada-Solano, 625 F.2d 577, 579 (5th Cir. Unit B 1980) (“one may not willfully and intentionally remain ignorant of a fact important and material to his conduct, in order to escape the consequences of the criminal law”).
Luis’s involvement in the deliveries was overwhelmingly suspicious. As the Government noted in its opening argument, El Paso is known as a source city for narcotics. Luis Gil (“Gil”), an acknowledged drug dealer, testified that Willie referred to his brother as a person who was helping him in the drug business. In particular, Willie stated to Gil that “he got real busy and he couldn’t handle it by himself so he had to get his brother involved.” Luis Reveles was paid $50 for a job that took him half an hour, and that consisted of meeting other men in a parking lot, driving a pre-loaded truck to a shipping com *692 pany, and then returning the truck. The other men would wait for Luis to return. The packages, which purportedly contained ceramic tiles, were wrapped airtight in cellophane. Luis knew that Willie worked as a McNutt salesman, and yet he made deliveries for the fictitious company “CC Enterprises,” which had a non-existent address in El Paso. Luis did not pick up the packages at Willie’s house or at a legitimate business. The circumstances were highly suspicious, and yet Luis did not question why he was being used when the other men could have delivered the packages. A rational juror could conclude beyond a reasonable doubt, based on all of the evidence, that Luis knew that the packages contained drugs, or that he remained deliberately ignorant of that knowledge.
Luis attempts to minimize his involvement by arguing that the Government’s evidence only suggests that he made two deliveries. Testimony at trial, however, indicates that Luis made numerous deliveries for Willie. Luis’s post-arrest statement to the police, in which he denied knowledge of the packages’ contents, was entered into evidence at trial.[3] Luis’s statement contains discrepancies regarding the number of times that he assisted Willie. Although Luis described three deliveries, he also stated that he helped Willie on “at least three occasions.” Further, he states that, on the day of his arrest, he met “the same three guys, which ha[d] been at the previous three deliveries.” A juror could infer from Luis’s statement that he made deliveries for Willie on more than three occasions, and that he downplayed his involvement to the police.
Other testimony also suggests that Luis made several drop-offs. First, the testimony of Frederico Robles indicates that Luis made at least six deliveries. Federico Robles testified that on five occasions prior to learning that the packages contained marijuana, he delivered shipments to Luis at a Dodge dealership. After learning the packages’ contents, Robles made a sixth delivery to Luis at McDonald’s (on the day of Luis’s arrest). Additionally, Sylvia Torres, Celest Hardts, and Dennis Owens, employees of SGT, tes *693 tified that Luis made several deliveries for Willie. They each gave varying vehicle descriptions. Torres testified that Luis drove different vehicles to meet her at the carrier — one was “like a pickup” and one was “like a ... suburban,” and “at one time I think there was a rental truck.” Hardts stated that she saw Luis more often than Willie. Each time she met a shipment, it was delivered by Luis, and she remembered him driving a two-toned brown/beige van, a U-haul truck, and a red truck. Owens testified that he accepted shipments from Luis on a “few” occasions. Owens testified that Luis drove a U-Haul truck, a red and white truck, and a different colored van, and that there were two different vans used. These descriptions contradict Luis’s statement, in which he claims that he only made three deliveries and that the delivery vehicle was always a red truck. The contradiction between the testimony and Luis’s statement must be resolved in favor of the verdict. See Brito, 136 F.3d at 408. Thus, a juror could reasonably infer from the testimony that Luis performed the suspicious delivery routine on a regular basis. Luis’s participation in a large number of deliveries involving multiple vehicles also supports the conclusion that Luis had knowledge of the nature of the deliveries.
Luis asserts that his demeanor during the deliveries prohibits a reasonable inference of knowledge. Luis claims that the fact that he once left his name with the shipping company proves that he did not know the packages’ contents. The fact that Luis left his name, however, does not prohibit an inference of knowledge. There are a number of explanations for this behavior that is consistent with knowledge of the packages’ contents, including sloppiness or arrogance about the prospect of getting caught. Luis also points out that he dropped off a package with the shipping company in the presence of customs agents and three narcotics dogs. One day while Owens was speaking with customs agents, Luis arrived in a van. According to Owens, it was only after the conversation ended, and the officers went into the warehouse, that Luis approached Owens and asked him why Owens was talking to the customs officers. Owens said “Why, does it matter?,” and told Luis that the conversation involved Owens’s application to become a customs officer. Owens stated that Luis’s reaction was one of shock. Luis then dropped the subject. Although Luis claims that his behavior was consistent with innocence, his behavior, and his reaction of shock in particular, reasonably could be inferred to reflect an unusual concern about the presence and purpose of customs officers.
The circumstances in this case were so overwhelmingly suspicious that Luis’s failure to conduct further inquiry suggests a conscious effort to avoid incriminating knowledge. See United States v. Daniel, 957 F.2d 162, 170 (5th Cir.1992); Lara-Velasquez, 919 F.2d at 952. In light of the theory of guilt, the collective effect of the evidence, taken in a light most favorable to the Government, is sufficient to establish knowledge.[4] See Rada-Solano, 625 F.2d at 580; Restrepo-Granda, 575 F.2d at 529. I would hold that the district court judge did not err in denying Luis’s motion for a judgment of acquittal. Thus, I respectfully dissent as to Part III.

. Under 21 U.S.C. § 841(a)(1), possession of marijuana with the intent to distribute has three elements: (1) knowing (2) possession of marijuana (3) with intent to distribute. See Miller, 146 F.3d at 280. To prove a drug conspiracy under 21 U.S.C. § 846, the government must prove (1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant’s knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy. See United. States v. Thomas, 120 F.3d 564, 569 (5th Cir.1997), cert. denied, - U.S. -, 118 S.Ct. 721, 139 L.Ed.2d 660 (1998).

. Luis does not challenge this instruction. A deliberate ignorance instruction, which is rarely given, is justified if the defendant disclaims knowledge of the wrongdoing, there were highly suspicious circumstances surrounding his activities, and he consciously avoided knowledge. "[T]he instruction is nothing more than a refined circumstantial evidence instruction properly tailored to the facts of a case....” United States v. Daniel, 957 F.2d 162, 169 (5th Cir.1992) (quotations and citations omitted).

. Luis did not testify at trial. His statement contains the following:
This year my brother has helped me with jobs on at least three occasions. The three jobs consisted of taking packages to freight companies to be shipped out of town. The first of the three shipments occurred about five months ago. I took two pallets weighting [sic] a total of about 800 pounds of what I beleived [sic] to be fauchet [sic] handles to DANNY HERMAN freight company.... I would pick up each shipment with the same routine. My brother called me around 12:00 and 03:00pm to tell me to meet those three guys, which you (officers) arrested today, at the TONY'S BURRITOS on Airways. I arrived at the restaurant and they were waiting for me inside the restaurant. There I picked up the keys to a truck (1993 GMC, pick-up truck, RED) from Frederico Robles.... I was instructed to take the shipment to DANNY HERMANS freight company which I did while the three guys waited at the restaurant. I delivered the shipment and returned the truck. My brother would show up and pay me fifty dollars.
The second shipment occurred much the same way. It was I guess in April of this year. The shipment consisted of one pallet weighting [sic] about 400 pounds.... I delivered the package to DANNY HERMAN then returned the same truck to those three guys at the TONY BURRITOS restaurant on airway. My brother showed up again and paid me fifty dollars.
The third shipment ... occurred today at the CONSOLIDATED FREIGHT company.... There the same three guys, which have been at the previous three deliveries, were waiting at the McDonald's. I entered the restaurant, got the keys from [Robles], then took the shipment to CONSOLIDATED FREIGHT. [The] truck is a 1989 GMC red with designs on the side. Inside the truck was one pallet wrapped with clear plastic wrap weighting [sic] about 500 pounds. This shipment didn't have an address because my brother told me he was going to stop by later with the paperwork. I left a note on the package saying "LUIS REVELES 192 VINSON 772-5881. HOLD WILL BE BACK THIS AFTERNOON.”
My brother works at McNUTT INC... .He has worked there for the past two to three years as a salesman.... I think Willie knew that there was drugs in the boxes that I shipped for him.

. Accordingly, I disagree with the majority that the evidence equally supports a theory of guilt and a theory of innocence, particularly in light of the jury’s choices regarding the weight of the evidence and the credibility of the witnesses.