UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-50103
SUMMARY CALENDAR
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

NELSON ALFONSO TREJO-PEREZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
(P-01-CR-237-1)
_____

October 24, 2002

Before REYNALDO G. GARZA, JONES, and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

    In this appeal, we review whether there was sufficient evidence to support the conviction

of Defendant, Nelson Alfonso Trejo-Perez, on one count of importation of cocaine and one count

of possession of cocaine with intent to distribute –violations of 21 U.S.C. §§ 841(a)(1), 952(a)

and 960(a)(1). For the following reasons, we affirm the district court's judgment.

_____

    [1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

-1-

On June 6, 2001, Nelson Alfonso Trejo-Perez and Santiago Garcia de la Garza crossed over from Mexico into the United States in a truck driven and owned by Trejo-Perez. They were stopped by Robert Adams, an Immigration Inspector, at the port of entry in Presidio, Texas. Adams testified that, although cooperative, Trejo-Perez appeared "a bit nervous," "rigid" and "not completely at ease." Believing further investigation was warranted, Adams flagged the vehicle for a secondary inspection.

During the secondary search, inspectors noticed fresh blue sealant and scratches on the screws of the intake manifold, which indicated to agents that the manifold had recently been worked on. Keith Kurtz, an inspector working the secondary search, testified that when a screwdriver was called for to remove the air filter, Trejo-Perez –who had up until this point been watching the inspection– turned away and faced the opposite direction.

The agents ultimately discovered a box containing five bundles of a white powder –which was later confirmed to be approximately three and one half kilograms of cocaine– concealed within the manifold of Trejo-Perez's truck. The cocaine was wrapped in duct tape and the tape's condition indicated that the cocaine had been recently packaged.

Trejo-Perez and Garcia de la Garza were subsequently indicted by a grand jury on one count of importation of more than 500 grams, but less than 5 kilograms, of cocaine and one count of possession of the same amount of said substance with intent to distribute. The case proceeded to trial where a jury found Trejo-Perez guilty on both counts.[2] After denying his motion for post

---

[2] The jury also found Garcia de la Garza guilty on both counts, but his convictions were overturned by the district court pursuant to a Fed. R. Crim. P. 29(c) motion for judgment of acquittal.

verdict judgment of acquittal, the district court sentenced Trejo-Perez to ninety-seven months in prison and four years supervised release. Trejo-Perez filed a timely notice of appeal.

## II.

Appellant contends that the evidence is insufficient to support his convictions. As this Court has noted, the narrow scope of our review for sufficiency of the evidence following a conviction is well established. *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996). We must affirm the conviction if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. *Id*. Furthermore, we consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices made in support of the verdict. *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998).

The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence. *Lopez*, 74 F.3d at 577. If, however, the evidence gives equal or nearly equal support to theories of guilt and innocence, then reversal is required. *Id*.

To establish possession of cocaine with intent to distribute, the Government must prove beyond a reasonable doubt that the defendant (1) knowingly (2) possessed cocaine (3) with the intent to distribute. *United States v. Medina*, 161 F.3d 867, 873 (5th Cir. 1998). The offense of importation of cocaine likewise has three elements; the government must prove that the defendant: (1) played a role in bringing a quantity of cocaine into the United States from outside of the country; (2) knew the substance was controlled; and (3) knew the cocaine would enter the United States. *Id*.

Trejo-Perez does not deny that the evidence was sufficient to establish that he possessed

-3-

or imported cocaine. Rather, he contends that a rational jury could not have found beyond a reasonable doubt that he knew cocaine was concealed within the engine of his vehicle. Therefore, he only challenges the scienter element of the offenses for which he was convicted.

A jury may generally infer knowledge of the presence of drugs from the exercise of control over a vehicle containing such contraband. *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995). When the narcotics are hidden, however, the Government must produce additional indicia that the defendant was aware of the presence of drugs. *Lopez*, 74 F.3d at 577-78. This additional requirement stems from this Court's recognition that, in hidden compartment cases, there is at least a fair assumption that a third party might have concealed the controlled substance in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise. *Ortega Reyna*, 148 F.3d at 544. This assumption is heightened when the vehicle is a "loaner" or has otherwise been in the possession of the suspect for only a short time. *Id*.

Behavior that we have previously recognized as circumstantial evidence of guilty knowledge includes inconsistent statements to inspection officials, implausible explanations, failure to make eye contact, obvious or remarkable alterations to the vehicle, particularly when the defendant has been in possession of the vehicle for a substantial period of time, and nervousness or a lack thereof. *Id*.

As discussed above, Trejo-Perez contests only the knowledge element of the two offenses for which he was convicted. If a jury could infer that Trejo-Perez knew of the cocaine in his truck, it could also find beyond a reasonable doubt that he knew the cocaine would enter the United States. Resultantly, neither the Government nor the Appellant discuss the importation and

possession convictions separately. Likewise, this Court will analyze the knowledge elements of the two convictions concurrently.

III.

Defendant concedes that he was in control of the vehicle in which cocaine was hidden, but contends that no additional evidence was presented that would show a consciousness of guilt sufficient to support an inference of knowing possession. The Government maintains that the following circumstantial evidence "was more than sufficient to permit an inference that Appellant knowingly possessed and imported cocaine": (1) Appellant's behavior changed dramatically when one of the agents requested a screwdriver in order to further inspect Appellant's vehicle; (2) Appellant was "rigid" and "looked a bit nervous" at the primary inspection; (3) the defendant gave inconsistent statements regarding his travel plans and the origin of his truck; (4) there was evidence of recent alterations to the truck, including moist sealant on the truck's manifold; and (5) the cocaine was freshly packaged. The government's circumstantial evidence is considered in the following sub-sections.

(A.) *Appellant's "Dramatic Behavioral Change" During the Secondary Inspection.*
As discussed above, inspection officials testified that Trejo-Perez looked away when an agent mentioned procuring a screwdriver in order to further inspect Appellant's vehicle. According to the Government, this fact should be considered as a part of the circumstantial evidence of Appellant's guilty knowledge. We are not persuaded, however, that Trejo-Perez's act is relevant to the issue of guilty knowledge. During their testimony, the agents involved specifically noted that Appellant's demeanor did not change in any other way during the secondary inspection. In other words, Trejo-Perez merely turned away from the truck and then

-5-

subsequently turned back. Simply looking away momentarily or changing one's position may be indicative of any number of things, or it may indicate nothing more than discomfort or distraction. In this case such an act is indicative of nothing of relevance –if indicative of anything at all. *See Ortega Reyna*, 148 F.3d at 545 (considering sufficiency of the evidence in a hidden compartment case)(holding that defendant's "single hesitation and downward glance" were indicative of nothing given the context).

(B) *Appellant's Nervousness at the Primary Inspection*.

We now turn to the evidence of Appellant's nervousness when he was initially stopped at the border checkpoint. As discussed above, Inspector Adams testified that Trejo-Perez was nervous when being questioned during the primary inspection. A defendant's nervousness is among the types of behavior that we previously have recognized as circumstantial evidence of guilty knowledge. *Ortega Reyna*, 148 F.3d at 544; *see also United States v. Gutierrez-Farias*, 294 F.3d 657, 660 (5th Cir. 2002)(holding that defendant's nervousness before being directed to secondary inspection was evidence from which a rational jury could have inferred guilty knowledge in a hidden compartment case). Therefore, the defendant's nervousness at the primary inspection provides circumstantial evidence that the defendant was aware of the presence of drugs.

(C) *Inconsistent Statements.*

We next consider the evidence of Trejo-Perez's inconsistent statements, from which the Government argues a jury could have inferred the existence of guilty knowledge. According to the testimony of inspection officials, Trejo-Perez initially stated that the truck he was attempting to drive across the border had been purchased at a dealership. Upon being asked further questions

-6-

about the purchase of his truck, Appellant stated that he had bought the vehicle at a "corner lot" and did not know the identity of the seller. Furthermore, he could not identify the corner lot or provide documentation regarding the purchase. Trejo-Perez also told agents he was traveling to Dallas to purchase a 1990 Chevrolet truck. However, upon being asked exactly where the truck he planned to purchase was located, Trejo-Perez changed his story, asserting that he was merely going to Dallas to look for a vehicle to buy.

This Court has recognized inconsistent statements as among the types of behavior from which a jury can infer guilty knowledge. *See, e.g., United States v. Diaz-Carreon*, 915 F.2d 951, 954-55 (5th.Cir. 1990)(relying on, *inter alia*, defendant's inconsistent statements to demonstrate guilty knowledge in hidden compartment case). Therefore, Trejo-Perez's vague and inconsistent statements to agents regarding where he bought the truck and why he was going to Dallas may be relied on as circumstantial evidence of guilty knowledge. *See United States v. Achondo-Sandoval*, 910 F.2d 1234, 1237 (5th Cir. 1990)(relying on inconsistent statements regarding travel motives and destinations to indicate guilty knowledge); *but see Ortega Reyna*, 148 F.3d at 546 (finding nothing inherently inconsistent in different answers to questions regarding destination and origin given Ortega's plausible explanation for the inconsistencies at trial).

Trejo-Perez –as well as family members and friends– later testified that he had a vehicle resale business, pursuant to which he would travel to the United States, purchase vehicles and later resell them in Mexico. In addition, Appellant denied ever having told agents that the truck had been bought at a dealership, and denied telling agents that he was going to Dallas to look for a 1990 Chevrolet truck.

Appellant urges that his case is analogous to that of *Ortega Reyna*, a hidden compartment

case in which this Court found that the evidence provided equal support to theories of guilt and innocence, and therefore reversed the defendant's conviction. *Ortega Reyna*, 148 F.3d at 545-47. In *Ortega Reyna*, we found that the defendant had not made inconsistent statements that could be used as circumstantial evidence of his guilty knowledge because, at trial, he offered a plausible explanation for the alleged discrepancies in his answers to government officials' questions. *Id*. at 546. In the case at hand, however, Trejo-Perez simply denies ever having made the inconsistent statements. It is clearly established that on a review for sufficiency of the evidence we may not invade the jury's province by substituting our own credibility assessments for those of the jury. *Lopez*, 74 F.3d at 578. Therefore, Trejo-Perez's vague and inconsistent statements to agents regarding where he bought the truck and why he was going to Dallas may be relied upon as circumstantial evidence of guilty knowledge.

(D) *Appellant's Theory Regarding How the Cocaine Came to be in His Truck*.
　　We next consider Appellant's theory regarding how the cocaine came to be in his truck. At trial, Trejo-Perez introduced a vehicle title into evidence, which he alleged was the seized truck's title. The document shows that an individual named Jesus Manuel Lugo Ochoa bought a 1998 Dodge truck on December 31, 1997. According to Trejo-Perez, he received the title when he bought the truck; however, no documentary evidence concerning Trejo-Perez's purchase of the vehicle was produced.

Trejo-Perez also introduced several copies of Mexican newspapers into evidence. The newspapers were introduced to show, firstly, that vehicles are sold in "corner lots" in Mexico, and secondly, that an individual named Jesus Manuel Lugo Ochoa had been involved in a series of drug related incidents in August of 2001. During closing arguments, Trejo-Perez argued that a

possible explanation for the presence of cocaine in the truck was that it had been placed there by Lugo Ochoa, that the truck was subsequently seized or stolen, and that the truck was then resold to Trejo-Perez.

On appeal, Trejo-Perez argues that "the uncontradicted evidence established that he had purchased the vehicle a few days before June 6th, and unbeknownst to [Trejo-Perez], the prior owner was a notorious drug smuggler from Sinola Mexico." Appellant, however, misrepresents the evidence in relation to his theory that the previous owner of the truck was responsible for the cocaine being hidden inside the vehicle's engine. Although a vehicle title was introduced into evidence, the document does not establish that the title belonged to the truck that was driven across the border. No evidence of the vehicle's VIN number or other objective method of proof was offered regarding the actual identity of the vehicle in question. Trejo-Perez offered only his own testimony to establish the link between the title and his truck. In addition, the title that was introduced into evidence describes the vehicle's exterior color as white/silver sand[3]; the vehicle driven by Appellant, however, was red with silver-grey trim. In the end, the title merely establishes that someone named Manuel Lugo Ochoa bought a 1998 Dodge Truck on December 31, 1997.

Appellant's theory that the previous owner of the truck was responsible for placing the cocaine inside the vehicle's manifold seems, at the very least, somewhat implausible. It was never established that the Manuel Jesus Lugo Ochoa named in the title was the same individual referred to in the newspaper article. Therefore, contrary to his assertions, Trejo-Perez did not definitively

[3]Because the title is in Spanish, it actually refers to the truck's exterior color as "blanco/plata arena," which translates to "white/silver sand."

establish that the truck had previously been owned by a drug dealer. Furthermore, the evidence of recent alterations to the truck, in particular the moist sealant on the truck's manifold, and the fresh packaging of the cocaine seem to add to the incredulousness of Trejo-Perez's story. The fresh sealant on the truck's manifold and unadulterated packaging surrounding the cocaine would suggest that the drugs had been concealed in the engine only a short time before they were discovered by government agents. We have previously held that implausible explanations may be relied on as evidence of guilty knowledge. *See Ortega Reyna*, 148 F.3d at 543. Moreover, the jury apparently rejected Trejo-Perez's theory, and this Court must respect the jury's credibility findings. *See United States v. Moreno*, 185 F.3d 465, 472 (5th. Cir.1999)(considering a sufficiency of the evidence claim in hidden compartment case)("Even though Moreno testified that she was mistaken when she identified the briefcase as hers, the factual dispute must be resolved in favor of the verdict").

In sum, we find that the defendant's nervousness at the primary inspection, his inconsistent statements to government officials, the implausible explanation he offers, and the evidence of recent alterations to the vehicle, as well as the fresh packaging surrounding the cocaine, tip the scales in favor of providing a basis for affirming the verdict. *Accord United States v. Gutierrez-Farias*, 294 F.3d 657, 660-61 (5th Cir. 2002)(finding sufficient evidence in hidden compartment case based on, *inter alia*, defendant's nervousness and his inconsistent statements). We hold that this evidence provides a sufficient basis for a rational jury to infer that Appellant knew cocaine was hidden in the truck's engine. It was therefore also possible for the jury to find beyond a reasonable doubt that Appellant knew the cocaine would enter the United States.

IV.

Because the evidence was sufficient to convict Trejo-Perez for possession with intent to

distribute cocaine and for importation of cocaine, we AFFIRM his conviction and sentence.