**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 02-30631
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADAN DELIMA,

Defendant-

Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 01-CR-50108-ALL
- - - -- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
January 27, 2003

Before JONES, STEWART and DENNIS, Circuit Judges.

PER CURIAM:[*]

Adan Delima was charged in a five-count indictment with various drug offenses involving

cocaine and methamphetamine. He pleaded guilty to count two of the indictment charging him with

possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). He was sentenced

to 135 months of imprisonment, to be followed by three years of supervised release. He appeals the

district court's determination that the two ounces of methamphetamine for which he was held

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

accountable was pure or actual methamphetamine rather than a mixture or substance containing a percentage of pure or actual methamphetamine.

In March 2001, the Drug Enforcement Administration (DEA) Task Force in Shreveport, Louisiana, began receiving information that Adan Delima was selling large amounts of cocaine from his residence and at local night clubs in the Shreveport area. On April 26, 2001, DEA Task Force Agents executed a search warrant at Delima's home in Shreveport. During the search, Delima told them that he had purchased two ounces[**] of methamphetamine on April 25, 2001, from Kenneth Anderson. The agents discovered cocaine and methamphetamine in a box in Delima's kitchen. A lab report indicated 25.2 grams of methamphetamine, of which 1.9 grams were pure. The strength of the methamphetamine was 9%. However, to avoid double counting, Delima was held accountable for the two ounces of methamphetamine that he admitted purchasing, and not for the methamphetamine found in his home. The strength and purity level of the two ounces he admitted purchasing was unknown.

Because Delima was held accountable for both the cocaine and the methamphetamine involved in the conspiracy, the amount of each was converted to its marijuana equivalent, the two figures were added, and the total was used to find the correct base offense level. See U.S.S.G. § 2D1.1, comment. (n.10). According to the guidelines' drug equivalency table, one gram of methamphetamine (actual) equals 20 kilograms of marijuana and one gram of methamphetamine equals two kilograms of marijuana. See U.S.S.G. § 2D1.1, comment. (n.10). Delima was held accountable for 56.7 grams of methamphetamine (actual), which converted to 1,134 kilograms of marijuana. Delima argues that he should have been held accountable only for 113.4 kilograms of

---

[**] Two ounces equals 56.7 grams.

-2-

marijuana, the amount resulting from the conversion rate for methamphetamine rather than actual methamphetamine. He argues that the lesser conversion rate would have placed his guideline range of imprisonment at 87 to 108 months.

A sentencing court's interpretation of the guidelines is reviewed *de novo*, and the factual findings are reviewed for clear error. United States v. Carreon, 11 F.3d 1225, 1230 (5th Cir. 1994). A factual finding is not clearly erroneous unless the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. United States v. Mitchell, 964 F.2d 454, 457-58 (5th Cir. 1992). Drug quantity determinations are findings of fact reviewed for clear error. United States v. Medina, 161 F.3d 867, 876 (5th Cir. 1998). A preponderance of evidence must support them. Id. The evidence, which need not be admissible at trial, must possess "sufficient indicia of reliability to support its probable accuracy." Id. (quoting United States v. Kelley, 140 F.3d 596, 609 (5th Cir. 1998)(internal quotations omitted)).

In response to Delima's objection to the use in the presentence report of the greater conversion rate for methamphetamine, the probation officer stated that Delima had a history of being a large dealer of illegal drugs and that he regularly "cut" his cocaine with inositol prior to distribution so that he could double the amount of cocaine available for sale. The probation officer reasoned that Delima's history of repeatedly "cutting" cocaine in his drug distribution activities, supported the assumption that he also cut his methamphetamine prior to distributing it. He reasoned further that Delima had purchased two ounces of pure methamphetamine with the intention of cutting it prior to distribution. Delima points out that it was just as reasonable to assume that he purchased two ounces of a mixture containing methamphetamine, disposed of approximately one ounce, and had

approximately one ounce remaining when the search warrant was executed. That would mean that the entire two ounces had a purity level of 9%.

At the sentencing hearing, Agent J. J. Silva of the Shreveport Police Department testified that methamphetamine is typically sold as is and is not usually "cut" as cocaine is cut. The probation officer then admitted that the purity level of the methamphetamine purchased by Delima was not clear in light of the agent's testimony. The probation officer acknowledged that he was not an expert on methamphetamine, that he did not know whether there were different purities for larger amounts, and that he was not sure how methamphetamine was cut. The court did not inquire further on this issue. It concluded, based on the probation officer's responses to Delima's objections to the presentence report, that the quantity of methamphetamine set forth in the presentence report was correct. When defense counsel pointed out that this conclusion assumed that the entire quantity of methamphetamine was actual, the court stated its understanding that "that's how much a quantity of that narcotic was in his house." This statement is puzzling because the amount seized from Delima's house was not the amount used for sentencing purposes, nor was it pure or actual methamphetamine.

Because the methamphetamine seized contained only 1.9 grams or 9% methamphetamine (actual), there was evidence that Delima possessed methamphetamine that was not pure or actual. In addition, a witness testified that he had seen Delima cutting cocaine but had never seen him cutting methamphetamine. Agent J. J. Silva of the Shreveport Police Department testified that the search of Delima's residence did not reveal any chemicals to dilute methamphetamine. There was no expert testimony from a scientist or chemist regarding the manufacture of methamphetamine, methods of cutting it, or the likely level of purity of methamphetamine under the circumstances of this case.

In light of the probation officer's admission at the sentencing hearing of his lack of knowledge of methamphetamine and Agent Silva's testimony that methamphetamine is not typically "cut," the facts contained in the presentence report relative to the amount of methamphetamine did not have an adequate evidentiary basis or sufficient indicia of reliability to support probable accuracy. See Medina, 161 F.3d at 876. The court's failure to inquire further on this issue leads to the conclusion that it clearly erred in relying on the presentence report for its finding that the two ounces of methamphetamine at issue were pure or actual.

The Government argues that the district court's reluctance to allow the three-level reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility indicates that the court would not have imposed a lesser sentence if the lesser conversion rate had been used. However, the court did not refuse the reduction for acceptance of responsibility. The argument is therefore speculative at best.

The Government also argues that the same sentence would have been imposed using the lesser conversion rate if all of the cocaine described at the sentencing hearing was included in the calculation of drug quantity. While this may be true, the Government admitted at sentencing that despite there being no record of it, it had agreed to limit the amount of cocaine purchased by Bailey to one kilogram. Thus, any argument that amounts of cocaine not included in the drug quantity calculation could be included if the lesser conversion rate were used is without merit.

Accordingly, Delima's sentence is VACATED and this case is REMANDED for proceedings consistent with this opinion.          VACATED AND REMANDED.