United States Court of Appeals
Fifth Circuit

**F I L E D**

May 9, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 05-10461

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO CRESPO-HERNANDEZ; RAMON A. SANTOS; MANUEL MENDEZ also known as JUAN MANUEL COLON,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Texas
4:04-CR-00114-3

_____

Before REAVLEY, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Mario Crespo-Hernandez, Ramon Santos, and Manuel Mendez were found guilty of conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). For the reasons that follow, we affirm the judgment of the district court.

---

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

## I. FACTS AND PROCEEDINGS

Crespo-Hernandez, Mendez, and Santos—as well as Norma Pimentel, Victor Ortiz, and Stephanie Horta—were all charged in a one-count indictment with conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). The government initiated prosecution of this case following an undercover operation by Drug Enforcement Administration (DEA) agents and a confidential informant (CI). The CI provided information to the agents regarding a group of drug traffickers in the Rhode Island area, later identified as Appellants and the others charged, and the CI arranged for the sale of cocaine to the group in Fort Worth, Texas.

At trial, the government presented five witnesses in support of its case: Patrick Reilly, a Rhode Island police officer; Ronald Robinson, a DEA agent; Richard Martinez, a Forth Worth police officer acting undercover in the operation; Norma Pimentel, the then-girlfriend of Crespo-Hernandez and one of the charged co-conspirators; and Kevin Brown, the Tarrant County District Attorney who investigated the crime scene. The CI, Jose Cruz Garcia, did not testify. Robinson testified as to the set up of the operation, including the coordination among the offices in Rhode Island and Fort Worth and the use of the CI to contact Rhode Island phone numbers. Martinez testified that the plan called for him to pose as a drug dealer with the CI in the Fort Worth area. Under the agents' direction, on December 3, 2003, the day of the transaction, the CI placed phone calls to Rhode Island to coordinate the transaction. Reilly identified the Rhode Island phone number as that of Santos. As a result of these phone calls, agents knew that two groups of people were coming to Fort Worth to purchase cocaine; one group was to purchase twelve kilograms, and the other, five kilograms. Santos gave the CI a contact phone number for each group.

2

Martinez further testified as follows:  on the day of the transaction, Martinez and the CI went to a Shell station to meet Pimentel and Crespo-Hernandez.  From the Shell station, with Pimentel and Crespo-Hernandez following them, Martinez and the CI then traveled to a Jack-In-The-Box in order to meet Ortiz and Mendel.  From the restaurant, the entire group relocated to a warehouse where the transaction was conducted.  At the warehouse, Martinez asked to see the money before producing the cocaine.  Mendez retrieved money from under the dashboard of the car that he and Ortiz were driving and indicated that he only had enough money for four kilograms of cocaine instead of five.  Crespo-Hernandez retrieved money from the back of the jeep that Pimentel was driving by removing the back seat and accessing a concealed compartment.  The money was placed on a table.  Pimentel told Martinez that they only had enough money for eleven kilograms of cocaine.  Martinez then called an undercover officer to deliver the bag of cocaine, retrieved it, and placed it on the table.  As Appellants began to remove the cocaine from the bag, Martinez gave the arrest signal, and officers came in and arrested all participants.

Pimentel, who agreed to testify as part of her plea agreement, largely corroborated the story presented by Robinson and Martinez.  She confirmed that she was supposed to buy eleven kilograms of cocaine for Santos and that he would pay her and Crespo-Hernandez $5000 each for their services.  She also stated that Santos arranged to have the hidden compartment installed in the back seat of her car and that Crespo-Hernandez stored and retrieved the money from the compartment because she did not know how to access it.  She testified that she had served as a drug runner for Santos in the past and that Crespo-Hernandez had accompanied her on one of the trips.  Finally, she testified that she did not know Mendez before the day of the transaction.

Appellants presented no witnesses at trial.  The jury found Appellants guilty.  The district

3

court sentenced Santos to a 260-month term of imprisonment and a five-year term of supervised release. Crespo-Hernandez was sentenced to a 170-month term of imprisonment and a five-year term of supervised release. Mendez was sentenced to a 240-month term of imprisonment and a ten-year term of supervised release. Appellants raise several issues on appeal: (1) sufficiency of the evidence, (2) Confrontation Clause violations, (3) sentencing errors, and (4) ineffective assistance of counsel.

## II. DISCUSSION

### A. Sufficiency of the evidence

Both Crespo-Hernandez and Mendez moved for a judgment of acquittal at the close of evidence. *See* FED. R. CRIM. P. 29. A motion for a judgment of acquittal challenges the sufficiency of the evidence, and we review the denial of this motion de novo. *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998). In our review, we consider "the evidence, all reasonable inferences drawn from it and all credibility determinations in the light most favorable to the Government, and affirm if a reasonable jury could find the offense's essential elements beyond a reasonable doubt." *Id*.

To establish a conspiracy, the government must prove beyond a reasonable doubt "(1) that an agreement existed between two or more persons to violate the applicable narcotics law (*i.e.*, a conspiracy existed), (2) that each alleged conspirator knew of the conspiracy and intended to join it and (3) that each alleged conspirator participated (*i.e.,* joined) voluntarily in the conspiracy." *Id*. It is enough that the agreement is tacit; an express or explicit agreement is not required. *United States v. Westbrook*, 119 F.3d 1176, 1189 (5th Cir. 1997). Additionally, "a person may be guilty as a co-conspirator even if he plays only a minor role, and he need not know all the details of the unlawful enterprise or know the exact number or identity of all the co-conspirators, so long as he knowingly participates in some fashion in the larger objectives of the conspiracy." *Id*. (citations omitted).

4

Either direct or circumstantial evidence may be used to prove the elements of the conspiracy. *United States v. Virgen-Moreno*, 265 F.3d 276, 284–85 (5th Cir. 2001) (citing *United States v. Casilla*, 20 F.3d 600, 606 (5th Cir. 1994)). "Additionally, presence and association with other members of a conspiracy, along with other evidence, may be relied upon to find a conspiracy." *Id.* (internal quotations and citation omitted). *See also United States v. Chavez*, 947 F.2d 742, 745 (5th Cir. 1991). The jury is free to choose among reasonable constructions of the evidence; however, if the evidence gives equal circumstantial support to innocence as to guilt, then we must reverse the verdict. *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999); *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995).

**(1) Crespo-Hernandez**

Crespo-Hernandez argues that the evidence only establishes his presence at the drug transaction, not his knowledge of the conspiracy or agreement to participate in it. However, Pimentel's testimony provided ample circumstantial support for the jury to convict him. Pimentel testified that Santos would pay her and Crespo-Hernandez $5000 each to retrieve the drugs from Texas. She also stated that Santos gave Crespo-Hernandez, not her, the money to be used to buy the drugs before they departed for Texas. Pimentel stated that Crespo-Hernandez put the money in the hidden compartment under the backseat of the Jeep and retrieved the money from the car at the warehouse because she did not know how to access the hidden compartment. Finally, Pimentel testified that she and Crespo-Hernandez made a trip to El Paso, Texas, in 2003 to pick up nine kilograms of cocaine for Santos.

It is not disputed that Crespo-Hernandez accompanied Pimentel to Texas and that he was present at the drug transaction. While presence at a crime scene alone does not establish a

defendant's participation in a conspiracy, the jury may consider presence and association, along with other evidence, in order to find conspiratorial activity. *Chavez*, 947 F.2d at 745. Here, the fact that Crespo-Hernandez bore the responsibility of storing and accessing the drug money and the fact that he was going to be paid suggest that he knew the purpose of the trip to Texas and voluntarily participated in it. Moreover, the evidence that Pimentel and Crespo-Hernandez had served as drug runners for Santos in the past supports the conclusion that Crespo-Hernandez had the requisite knowledge and intent for the instant offense. Considering this evidence and the inferences to be drawn from it in the light most favorable to the government, a jury could find Crespo-Hernandez guilty of conspiracy beyond a reasonable doubt.

**(2) Mendez**

Mendez does not dispute that he was involved in a conspiracy; instead he argues that the evidence failed to show that he joined in the single conspiracy alleged in the indictment because the evidence showed the existence of two conspiracies. He claims one conspiracy consisted of Santos, Crespo-Hernandez and Pimentel, and the other consisted of Ortiz, Mendez, and Horta. In support, Mendez relies on several pieces of evidence: (1) two groups came in two separate cars; (2) Martinez and the CI initially met each group at a different location; (3) Pimentel testified that she had not seen the other group before they arrived in Forth Worth and did not know they would be there; (4) Martinez testified that Mendez was "uncomfortable" conducting the transaction with another group present; and (5) there was no evidence that the group consisting of Mendez, Ortiz and Horta were sent by Santos.

To prevail on a variance claim, the appellant must prove that: "(1) a variance existed between the indictment and the proof at trial, and (2) the variance affected [the appellant's] substantial rights."

6

*United States v. Pena-Rodriguez*, 110 F.3d 1120, 1126 (5th Cir. 1997) (citing *United States v. Morris*, 46 F.3d 410, 414 (5th Cir. 1995)). To determine whether there was a variance between the indictment and the proof at trial, the number of conspiracies proved at trial must be counted, and in this regard, the following factors are considered: "'(1) the existence of a common goal, (2) the nature of the scheme, and (3) the overlapping participants in the various dealings.'" *Id.* (quoting *Morris*, 46 F.3d at 415). "Whether the evidence shows one or multiple conspiracies is a question of fact for the jury." *Id.* "A jury's finding that the government proved a single conspiracy must be affirmed unless the evidence viewed in the light most favorable to the government would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt." *Id.*

Viewing the evidence in the light most favorable to the government, reasonable jurors could have found the existence of a single conspiracy. "A single conspiracy exists where a 'key man' is involved in and directs illegal activities, while various combinations of other participants exert individual efforts toward a common goal." *United States v. Richerson*, 833 F.2d 1147, 1154 (5th Cir. 1987). In addition, as stated, participants need not have knowledge of the existence of all other participants. *Westbrook*, 119 F.3d at 1189. Even though the evidence showed that two distinct group traveled to Forth Worth to conduct the transaction, the evidence also showed that Santos was the "key man" in charge of directing the various participants. Contrary to Mendez's assertion that no evidence linked Santos to his group, Agent Robinson testified, while reviewing the log of telephone calls made from Santos's cell phone and calls received on Ortiz's cell phone, that a call was placed from Santos to Ortiz on December 3, 2003, the day of the drug transaction. The evidence also showed that both groups came to Fort Worth on the same day and that Santos gave the CI contact numbers for both groups. Even though each group may have been unaware of the existence of the

7

other, Santos served as the key man directing the two groups. Because of Santos's role connecting the two groups, the evidence was sufficient to show there was a single conspiracy.

Mendez also argues that the evidence failed to show that he conspired to distribute more than five kilograms because the government only proved his conspiracy to possess four kilograms. The indictment alleged conspiracy to distribute five or more kilograms of cocaine. To meet its burden of proof at trial, the government need only prove conspiracy to distribute five or more kilograms based on the conspiracy as a whole, not the quantity attributable to each co-conspirator. *United States v. Turner*, 319 F.3d 716, 722–23 (5th Cir. 2003) (adopting the rule of the First Circuit in *Dermon v. United States*, 298 F.3d 94 (1st Cir. 2002)). The evidence showed that one group purchased four kilograms (the group Mendez was associated with) and another group purchased eleven. As a result, the government has met its burden of proof with respect to the conspiracy as a whole, and Mendez's insufficiency argument fails.

## B. Confrontation Clause violations

Both Mendez and Santos allege that their Confrontation Clause rights were violated by the admission of statements made by the CI through the testimony of Martinez and Robinson. Specifically, Mendez complains that he was harmed by testimony showing that the CI made arrangements with Appellants to set up the drug transaction. Santos complains that he was harmed because the out-of-court statements proved he sent the two groups to Texas and was the organizer of the operation. We review alleged Confrontation Clause violations de novo. *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004) (citing *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995)).

For Mendez's and Santos's Confrontation Clause rights to be violated, the statements by the

8

CI must have been testimonial in nature. In *Crawford v. Washington*, 541 U.S. 36, 68–69 (2004), the Supreme Court held that out-of-court statements by witnesses that are testimonial are barred, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. The Court did not further define what constitutes a testimonial statement; however, it did articulate a "core class" of testimonial statements: "ex parte in-court testimony or its functional equivalent . . .; extrajudicial statements . . . ; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. at 51–52 (internal quotations and citations omitted). The Court also stated that an "accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51

This circuit has not yet developed a comprehensive definition of "testimonial." We have, however, looked to the Court's discussion in *Crawford* for guidance of the types of situations where a witness is deemed to be bearing testimony. *See United States v. Gonzales*, 436 F.3d 560, 546 (5th Cir. 2006) (stating that an excited exclamation, even though made while the declarant was in custody, would probably not qualify under *Crawford* because the situation was not an interrogation or anything similar); *United States v. Lopez-Moreno*, 420 F.3d 420, 436 (5th Cir. 2005) (stating that a photocopy of an identification card in no way involves a witness bearing testimony). Here, though Appellants argue that the content of the CI's statements to Robinson and Martinez was testimonial, the exchanges between the CI and the co-conspirators with whom he spoke on the phone do not resemble any of the "core class" of testimonial statements articulated by the Court in *Crawford*. *See* 541 U.S. at 51–52. The CI was not being interrogated by police officers, nor was he making a formal statement to the DEA agents in anticipation of trial. Instead, under the constant direction of DEA

9

agents, the CI was coordinating a drug transaction, directing his statements to the co-conspirators themselves. There was no violation of Mendez's and Santos's Confrontation Clause rights.

## C. Sentencing errors

### (1) Crespo-Hernandez

Crespo-Hernandez argues that the district court should have downwardly adjusted his sentence pursuant to U.S.S.G. § 3B1.2 because of his alleged minor role in the conspiracy. His trial counsel did not request a downward adjustment before the district court, and where, as here, the defendant does not raise the issue of his role at sentencing, this court reviews for plain error. *See United States v. Fierro*, 38 F.3d 761, 773 (5th Cir. 1994). The determination of a defendant's role in an offense is factual in nature. *United States v. Zuniga*, 18 F.3d 1254, 1261 (5th Cir. 1994). However, "questions of fact capable of resolution at sentencing can never constitute plain error." *Fierro*, 38 F.3d at 773 (citing *United States v. Guerroro*, 5 F.3d 868, 871 (5th Cir. 1993)). As a result, Crespo-Hernandez's challenge does not survive plain error review.

### (2) Santos

Santos argues that his Sixth Amendment rights were violated because he was held accountable for an amount of cocaine beyond what was alleged in the indictment and because his sentence was enhanced based on a prior conviction. Santos did not object to his sentence before the district court, and, therefore, we will review for plain error. *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005).

Santos's objections are foreclosed. First, regarding the quantity of cocaine Santos was held accountable for, we have held that the Sixth Amendment does not prohibit a sentencing judge from finding all the facts relevant to sentencing. *See Mares*, 402 F.3d at 519; *United States v. Lopez-*

10

*Urbina*, 434 F.3d 750, 759 (5th Cir. 2005); *United States v. Alonzo*, 435 F.3d 551, 553 (5th Cir. 2006). Second, prior convictions are permissible sentencing factors and need not be admitted by the defendant or found by the jury beyond a reasonable doubt. *See Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998); *see also United States v. Martin*, 431 F.3d 846 853 (5th Cir. 2005) (acknowledging that *Apprendi* did not overrule *Almendarez-Torres*).

**(3) Mendez**

Mendez objects to the procedure set forth in 21 U.S.C. § 850 for enhancement of sentences based on prior convictions, but he concedes that his objection is foreclosed by *Almendarez-Torres*, 523 U.S. 224. He raises the issue to preserve it for possible further review.


**D. Ineffective assistance of counsel**

For the first time on appeal, Crespo-Hernandez alleges that his right to effective assistance was violated because counsel failed (1) to thoroughly object to the presentence investigation report, (2) to request a downward adjustment due to Crespo-Hernandez's minor role, and (3) to schedule an interview with Crespo-Hernandez to meet with the government to substantiate his qualification for a sentence below the statutory minimum pursuant to U.S.S.G. § 2D1.1(b)(6). "[A] claim of ineffective assistance of counsel generally cannot be addressed on direct appeal unless the claim has been presented to the district court; otherwise there is no opportunity for the development of an adequate record on the merits of that serious allegation." *United States v. Navejar*, 963 F.2d 732, 735 (5th Cir. 1992) (citing *United States v. Higdon,* 832 F.2d 312 (5th Cir. 1987)). In "rare cases" where the record is adequately developed to permit this court to fairly evaluate the merits of the claim, we will resolve an allegation of ineffective assistance of counsel on direct appeal. *Id*. Here,

the record does not indicate if a reason existed for defense counsel's decisions. Because the record is not sufficiently developed with respect to Crespo-Hernandez's claim, we will not address it. We also note that the Supreme Court has stated that claims for ineffective assistance brought under 28 U.S.C. § 2255 are preferable to direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504–05 (2003).

## IV.  CONCLUSION

The judgment of the district court is AFFIRMED.